## Carter, et al. v. Griffith, et al.

(Decided February 5, 1918.)

Appeal from Ohio Circuit Court.

1. Eminent Domain—Drains and Drainage Districts—Public Use.— Under our Constitution authorizing the taking of private property for public use, benefit to the public health is not the sole purpose for which the drainage power may be exercised, but reclamation of low or swamp land ·for agricultural and other economic purposes is within the proper scope of the governmental function.

2. Drains—Establishment of Drain—Purposes—Instructions.—Under our statutes authorizing the establishment of a ditch if the drainage will result in a public benefit or utility, or the public health, convenience, or welfare will be promoted thereby, it was error in a proceeding to establish a ditch to tell the jury to find against its construction if they believed the public ditch would not benefit the public health.

3. Drains—Proceeding for Establishment—Evidence.—In a proceeding to establish a ditch, evidence that the land below the drainage district would be damaged, was improperly admitted where no land owner asked damages on that account.

4. Drains—Witnesses—Expert Testimony.—In a proceeding to establish a ditch, it was error to permit witnesses who had not qualified as experts by showing any scientific or practical knowledge on the subject, to give it as their opinion that it was not practicable to drain the proposed district by a public ditch.

5. Drains—Establishment—Evidence.—In a proceeding to establish a ditch, it was error to permit witnesses to testify that the dirt would be piled on either side of the ditch in solid or continuous embankments which would cause the water to accumulate in holes and create malaria, as it will not be assumed that the Board of Drainage Commissioners and its engineer will be guilty of gross negligence in the construction of the ditch.

6. Drains—Establishment—Evidence.—In a proceeding to establish a ditch, it was error to refuse to permit a witness, who had stated that the cost of the drain would approximate $6.00 per acre, to estimate the benefit which would result from the construction of the ditch.

7. Drains—Proceedings to Establish—Evidence.—In a proceeding to establish a ditch, evidence that another ditch had been authorized by a court of competent jurisdiction and was in process of construction down to the very point where the proposed ditch would begin, is admissible if accompanied by further evidence to the effect that the digging of the other ditch will increase the amount of water flowing upon the boundary of the proposed drainage district.

WOODWARD & KIRK and M. L. HEAVRIN for appellants.

W. T. ELLIS and GLENN & SIMMERMAN for appellees.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

Finley Carter and others brought this proceeding to establish a ditch or drain in the valley of Panther creek in Ohio county. Exceptions were filed by certain land owners and the trial in the county court resulted in a judgment dismissing the petition. On appeal to the circuit court, the jury returned a finding against the establishment of the ditch, and the petition was again dismissed. The petitioners appeal.

The circuit court instructed the jury as follows:

"1. If you believe from the evidence that the proposed ditch will not benefit the public health, or will not be conducive to the general welfare of the community in which it is to be located or that the route is not the proper one; or that its construction is not practicable; then in either of said events you should find against the construction of the proposed ditch, and so say in your verdict.

"2. On the other hand, if you believe from the evidence that the proposed ditch will benefit the public health, and that the route thereof is proper, and its construction is practicable, then you should find in favor of the construction of the proposed ditch, and so say in your verdict."

It will be observed that the first instruction is in the disjunctive form and authorized a finding against the construction of the proposed ditch if the jury believed from the evidence that the proposed ditch would not benefit the public health, or would not be conducive to the general welfare of the community in which it was located, or that its route was not a proper one, or that its construction was not practicable. On the other hand, they were told by instruction No. 2, that if they believed from the evidence that the proposed ditch would benefit the public health, and that the route was proper, and that its construction was practicable, they should find in favor of the construction of the ditch. In other words, a finding in favor of the proposed ditch was not authorized unless the jury believed that it would benefit the public health.

It is the argument of appellees, the excepting land owners, that as the constitution only authorizes a taking of private property for a "public use," and as there was no evidence showing that the proposed ditch would benefit the public roads, there was no way in which the pro-

posed drain would constitute a public use, unless it benefited the public health. While it is true that this court in a number of cases has commented on the fact that a benefit to the public health was sufficient to constitute a public use, it has never gone to the extent of holding that a ditch could not be established unless it actually benefited the public health. While it may be true that in the case of Bennett, et al. v. Knott, et al., 112 S. W. 848, the court approved an instruction authorizing a finding in favor of the establishment of the ditch therein involved, if the jury believed that the construction of the ditch would be a public benefit and utility and conducive to the public health, convenience and welfare, the appeal in that case was by the excepting land owners, and they could not complain of an instruction which was more favorable than they deserved. It further appears that the court, though approving the instruction, added the following language: ''Whether the ditch was of public utility and benefit to the land of the parties, was a question to be decided by the jury.''

It is likewise true that some of the authorities hold that neither public convenience nor public welfare, independent of considerations of the public health, will justify the legislature in the enactment of laws for the construction of drains. Kinnie v. Bare, 68 Mich. 625, 36 N. W. 672; Hull v. Baird, 73 Iowa 528, 35 N. W. 613; Re Ryers, 72 N. Y. I., 28 Am. Rep. 88; Burk v. Ayers, 18 Hun. 17; but the more numerous and better considered cases hold that benefit to the public health is not the only purpose for which the drainage power may be exercised, but that reclamation of low or swamp lands for agricultural and other economic purposes is within the proper scope of the governmental function. The courts so holding have proceeded on the broader grounds that it is important to the state and to its citizens as a whole, as well as to individuals whose property may thus be directly affected by charges for benefits, that all the resources of the state shall so far as is practicable, be brought to the point of effective service. 9 R. C. L. 626; Sisson v. Buena Vista county, 128 Ia. 442, 104 N. W. 454, 70 L. R. A. 440; State v. Polk county, 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161 and note; Billings Sugar Co. v. Fish, 40 Mont. 256, 106 Pac. 565, 20 Ann. Cas. 264 and note, 26 L. R. A. (N. S.) 973; Norfleet v. Cromwell, 70 N. C. 634, 16 Am. Rep. 787. Thus in the case of Head v. Amoskeag Mfg. Com-

pany, 113 U. S. 9, 28 U. S. (L. ed.) 889, it was said: "The statutes which have long existed in many states, authorizing the majority of the owners in severalty of adjacent meadow or swamp lands to have commissioners appointed to drain and improve the whole tract, by cutting ditches or otherwise, and to assess and levy the amount of the expense upon all the proprietors in proportion to the benefits received, have been often upheld, independently of any effect upon the public health, as reasonable regulations for the general advantage of those who are treated for this purpose as owners of a common property. Coomes v. Burt, 22 Pick. (Mass.) 422; Wright v. Boston, 9 Cush. (Mass.) 233, 241; Sherman v. Tobey, 3 Allen (Mass.) 7; Lowell v. Boston, 111 Mass. 454, 469; French v. Kirkland, 1 Page (N. Y.) 117; People v. Brooklyn, 4 N. Y. 419, 438; Coster v. Tide Water Co., 18 N. J. Eq. 54, 68, 518, 531; O'Reilly v. Kankakee Valley Draining Co., 32 Ind. 169." Discussing the same question the supreme court of Arkansas in the case of Wilson v. Wm. R. Compton Bond, etc. Co., 103 Ark. 452, 146 S. W. 110, said: "Nor is it necessary that the entire state should directly enjoy or participate in an improvement of this nature in order to constitute it a public use within the meaning of the words as used in our constitution or the federal constitution, providing that property shall not be taken without consent of the owner except for a public use. In the broad and comprehensive view that has been taken of the rights growing out of these constitutional provisions, everything which tends to enlarge the resources and promote the productive power of any considerable number of the inhabitants of a section of the state contributes, either directly or indirectly, to the general welfare and the prosperity of the whole community, and, therefore, to the public." In these views we heartily concur.

Our statute requires that the petition for the establishment of the ditch shall state that the drainage will result in public benefit or utility, or that the public health, convenience, or welfare will be promoted thereby. Ky. Statutes, sub-section 2, section 2380. It further provides that if the report of the viewers shows the proposed improvement is not practicable, or that it will not benefit the public health or any public highway, or be conducive to the general welfare of the community, the petition shall be dismissed at the cost of the petitioners.

Kentucky Statutes, sub-section 4, section 2380. It will thus be seen that the right to establish a ditch is not restricted to cases of benefit to the public health or to the public roads, but is clearly authorized where the improvement will result in public benefit or utility or will promote the public welfare. And since the reclamation of low or swamp lands for agricultural purposes is a public use not only because it enables the land so drained to be used by a portion of the public, but contributes to the public welfare by adding to the natural resources of the state, we conclude that the trial court erred in making the establishment of the ditch depend on the jury's belief that it would benefit the public health.

In view of the reversal of the judgment, it will be necessary to pass on certain questions concerning the admissibility and rejection of evidence.

(a). The court permitted certain witnesses over the objection of the petitioners, to say that the land below the drainage district would be damaged by the construction of the proposed ditch. The statute authorizes any person feeling aggrieved to file exceptions and have his claim for damages litigated in the drainage proceeding. No land owner below the ditch filed exceptions. In view of this fact, the effect of the ditch upon the land below was not in issue and the evidence complained of should not have been admitted.

(b). It was error to permit Dr. Carter and Sam Neal, who had not qualified as experts by showing any scientific or practical knowledge on the subject, to give it as their opinion that it was not practicable to drain the proposed district by a public ditch. They should have been permitted to testify only to the facts, thus leaving to the jury the right to draw its own deduction from the facts so stated and the other evidence in the case.

(c). The court also permitted certain witnesses to testify that the dirt would be piled in solid and continuous embankments on either side of the ditch and that these embankments would hold the water out of the ditch, and that the stagnant water would accumulate in holes and create malaria. All this testimony was based on the assumption that the Board of Drainage Commissioners and its engineer would be guilty of gross negligence in the construction of the ditch, and should not have been admitted.

(d). The question of public benefit as well as the benefit to the land affected by the improvement, was material to the controversy, and it was therefore error to refuse to permit the witness Kelly, who had stated that the cost of the drain would approximate $6.00 per acre for each acre of land within the drainage district, to estimate the benefit which would result from the construction of the ditch.

(e). We are also of the opinion that upon another trial, the court should permit the petitioners to show that a public ditch called Haynes ditch had been authorized by a court of competent jurisdiction and was in process of construction down to the very point where the proposed ditch begins, if accompanied by further evidence to the effect that the digging of the Haynes ditch will increase the amount of water flowing upon the boundary of the proposed drainage district.

Judgment reversed and cause remanded for a new trial consistent with this opinion.