**CITY OF OWENSBORO, Kentucky, and the Owensboro Industrial Development Authority, Movants,**

v.

**Hubert McCORMICK, a Citizen, Resident and Taxpayer of the City of Owensboro, Kentucky, Individually and as a Representative of all Citizens, Residents and Taxpayers of said City, Respondent.**

Supreme Court of Kentucky.

May 1, 1979.

**4**

Hugh D. Moore, Moore, Moore and Hager, Owensboro, for movants.

B. C. Green, Green, Connor & Carroll, Owensboro, for respondent.

REED, Justice.

In this declaratory judgment action, the constitutionality of a provision in the Kentucky Local Industrial Authority Act[1] is in issue. The circuit court held the questioned provision that authorized the city to acquire real property by the exercise of eminent domain for the benefit of the authority was constitutionally valid. Declaring that the Act was unconstitutional to the extent that it granted a city or other governmental unit the unconditional right to condemn private property which was to be conveyed by the local industrial development authority for private development for industrial or commercial purposes, the Court of Appeals reversed on the appeal by the Respondent taxpayers. We granted the city's and the authority's motion for discretionary review. We now affirm the decision of the Court of Appeals.

I

The carefully considered opinion of the Court of Appeals sets out the factual picture in an accurate and objective manner:

"The purpose of the act is to aid in the development of land for industrial and commercial purposes in Kentucky, including the development of industrial sites, parks and subdivisions. For that purpose, a city, a county or any combination of cities and counties may establish a nonprofit industrial development authority which constitutes a body politic. Such local authorities are authorized to acquire real estate 'necessary or suitable' for establishing industrial sites, parks, or subdivisions. The authority is also expressly authorized to sell any land owned by the authority to any private industry for the purpose of constructing or operating any industrial or commercial facility. As a condition to a sale to private industry, the land must be reconveyed to the authority free and clear of any liens and encumbrances if no actual construction of an industrial facility is commenced within two years.

"Upon the adoption of the authority of a resolution reciting that property is needed for industrial sites, parks and subdivisions, the city or other governmental unit may institute condemnation proceedings under the eminent domain act to condemn the property for the use and benefit of the authority. The act placed few limitations upon this exercise of the power of eminent domain for the benefit of a local authority. The city or other governmental unit must give public notice stating the 'specific purpose' for which the property is being condemned. If the property is not developed within a period of five years pursuant to the purpose stated, the owners of the property condemned have the right to repurchase the property at the price paid.

"The act contains a declaration that all lands so acquired by a local authority are acquired for a public purpose. KRS 152.-920 provides:

'The acquisition of *any* lands for the purpose of developing industrial sites, parks and subdivisions is hereby declared to be a public and governmental

---

1. KRS 152.810 to 152.930.

function, exercised for a public purpose, and a matter of public necessity, and such lands and other property, easements and privileges acquired in the manner and for the purposes enumerated in KRS 152.810 to 152.930 shall and are hereby declared to be acquired and used for public and governmental purposes and as a matter of public necessity.'

"Under KRS 152.810(2), 'Industrial sites, parks and subdivisions' are defined as meaning 'land suitable for one or more industries or commercial establishments.' In effect, the legislature has declared that the acquisition of *any* land for the development of a single industrial or commercial establishment constitutes a public purpose. Under the act, the city would have the power to condemn private property for the benefit of the authority so that the authority could in turn convey that land to a private organization for development as an industrial or commercial facility." [2]

## II

The Kentucky Constitution, particularly Sections 13 and 242, has been interpreted repeatedly to prohibit the taking of private property for public use without compensation, and this prohibition has been consistently construed to forbid the taking of private property for private uses. 29A C.J.S. *Eminent Domain* § 29, at 251 (1965).[3] Both of these sections of our Constitution carefully use the term "public use" as contrasted with Section 171 of the same Constitution that commands taxes be levied and collected for "public purposes" only.

Our inquiry must be directed to whether the Kentucky Local Industrial Development Act constitutes "public use" of the lands of private citizens whose property is condemned by its authority. The Respondents argue that it manifestly does not. The city and the Authority insist that we should regard "public benefit" to be equivalent to "public use." They also urge that we adopt the expansive definition of "public purpose" used in our cases concerning the issuance of revenue bonds by a city or county for the acquisition of industrial property or where public funds are expended for the purpose of promoting industrial development by attracting new industry to all parts of the state as compliance with the constitutional requirement of "public use" in the eminent domain context.

## III

The parties have not cited nor does our research reveal a single Kentucky case which declares that either "public benefit" or "public purpose" is equivalent to "public use" in the eminent domain sense.

■ It would extend this opinion beyond tolerable limits if we attempted to analyze the many Kentucky cases which have decided in particular instances whether the condemnation sought was primarily for a public or a private use. The language in these various opinions cannot always be harmonized and the court has been more indulgent in finding the presence of public use in some instances than in others. The court has always, however, consistently recognized the necessity of protecting the right of a citizen to be secure in his ownership of property. Governmental compulsion to surrender his property must always be accompanied by payment of just compensation and be effected for a public use.

■ Naked and unconditional governmental power to compel a citizen to surrender his productive and attractive property to another citizen who will use it predominantly for his own private profit just because such alternative private use is thought to be preferable in the subjective notion of governmental authorities is repugnant to our constitutional protections whether they be cast in the fundamental

---

2. Unpublished opinion of Court of Appeals written by Judge Park in which all members of the three judge panel concurred. (footnotes omitted) (emphasis in original).

3. For a collection of Kentucky cases adhering to this construction see n.99.

fairness component of due process or in the prohibition against the exercise of arbitrary power. Ky.Const. Sec. 2.

In 1907, this court speaking through Judge John D. Carroll in *Chesapeake Stone Co. v. Moreland,* 126 Ky. 656, 31 Ky.L.Rep. 1075, 104 S.W. 762, 765, 16 L.R.A. (N.S.) 479 (1907) stated:

"If public use was construed to mean that the public would be benefited in the sense that the enterprise or improvement for the use of which the property was taken might contribute to the comfort or convenience of the public, or a portion thereof, or be esteemed necessary for their enjoyment, there would be absolutely no limit on the right to take private property. It would not be difficult for any person to show that a factory or hotel or other like improvement he contemplated erecting or establishing would result in benefit to the public, and under this rule the property of the citizen would never be safe from invasion."

This same view is approved, either expressly or impliedly, in *Sturgill v. Commonwealth, Department of Highways,* Ky., 384 S.W.2d 89 (1964); *Hudgens v. Register,* Ky., 285 S.W.2d 504 (1955); and *Robinson v. Swope,* 75 Ky. (12 Bush) 21 (1876).

The strictness of this view was somewhat relaxed in *Carter v. Griffith,* 179 Ky. 164, 200 S.W. 369 (1918). There the attack on the condemnation was that the drainage ditch for which the taking was effected did not qualify as a "public use" because it would benefit the private property to be drained. This court rejected the attack and stated:

"[T]he reclamation of low or swamp lands for agricultural purposes is a public use not only because it enables the land so drained to be used by a portion of the public, but contributes to the public welfare by adding to the natural resources of the state . . . ."

200 S.W. at 370. In the present case, the Court of Appeals aptly observed that the land involved in Carter had no agricultural or other economic use unless reclaimed by the use of drainage ditches, but that the Act now before the court would authorize the city to condemn productive agricultural property for the sole purpose of private industrial or commercial development. The *Carter* case is analogous to our cases involving slum clearance and urban blight where we have held that the elimination of blight in defined areas pursuant to specific legislative findings satisfied the "public use" requirement. E. g. *Spahn v. Stewart,* 268 Ky. 97, 103 S.W.2d 651 (1937), and *Miller v. City of Louisville,* Ky., 321 S.W.2d 237 (1959).

The Kentucky Local Industrial Development Authority Act makes no findings nor does it recite goals nor does it express guidelines. It merely provides that the acquisition of "any lands" for the purpose of developing an industrial or commercial establishment is a proper subject for the exercise of the power of eminent domain. As the Court of Appeals succinctly observed:

"It matters not that the land being condemned is productive and otherwise beneficial to the community. If a citizen's land is needed for industrial or commercial development, then it may be condemned under the act."

## IV

The movants rely on some of our cases upholding the validity of revenue bond issues by a city or county as a means of acquiring industrial property which is then leased to private industry. See *Faulconer v. City of Danville,* 313 Ky. 468, 232 S.W.2d 80 (1950), and *Dyche v. City of London,* Ky., 288 S.W.2d 648 (1956). In *Dyche* the city established by clear and convincing proof that widespread unemployment existed in the city and its surrounding area. Under the act presently before us the conditions of unemployment are wholly irrelevant.

The city also relies upon *Industrial Development Authority v. Eastern Kentucky Regional Planning Commission,* Ky., 332 S.W.2d 274 (1960). In that case we upheld the expenditure of public funds for the purpose of promoting industrial development by attracting new industry to all parts of the state. We stated that the elimination of unemployment and the devel-

opment of the natural and man-made resources of the state constituted a "public purpose" within the meaning of section 171 of our Constitution.

■ The trial judge concluded that the term "public purpose" in section 171 of the Kentucky Constitution which addresses itself to the taxing power and the term "public use" used in both sections 13 and 242 of the same document are synonymous. Hence, he reasoned that private property can be condemned for any purpose for which public funds might be expended. The Court of Appeals found that conclusion represented "an alarming concept." We agree. The opportunity for tyranny, particularly by the self righteous, exists in condemnation of private property to a vastly greater degree than in the levying of taxes and the expenditure of public funds. The popular political response to abuse of the taxing and spending power is generally swifter and more effective than is true where the citizen's private property is effectively and finally taken from him. In our view, the constitutional provisions involved clearly require that finding of "public purpose" does not satisfy the requirement of a finding of "public use." We concur in the Court of Appeal's observation that "government cannot use the power of eminent domain in order to act as land broker for private interests."

The city's reliance on *Craddock v. University of Louisville,* Ky., 303 S.W.2d 548 (1957) is misplaced. The education of medical students attending a municipal university clearly constituted a public use of the facility acquired by condemnation.

The parties have cited foreign authorities expressing varying views of the issue decided. We have considered them. We have found helpful these comments made in American Jurisprudence 2d:

"Generally, it may be taken as established law that the incidental benefit accruing to the public from the establishment of a large factory, mill, department store, or other industrial or commercial enterprise, is not a valid ground for ranking such an enterprise as a public use and entrusting it with the power to acquire a suitable site by eminent domain. Private enterprises that give employment to many and produce various kinds of commodities for the use of the people are not necessarily public uses. Every legitimate business, to a greater or lesser extent, indirectly benefits the public by benefiting the people who constitute the state, but that fact does not make such enterprises public businesses. . . . The discrimination by the state between different classes of occupations and the favoring of one at the expense of the rest, whether that one is farming, banking, merchandising, milling, printing, or mining, is not legitimate legislation and is an invasion of that equality of right and privilege which is a maxim of every free government. When the door is once opened to it, there is no limit that can be drawn. Every honest employment is beneficial to the public and deserves encouragement, but it is not the function of the state to make discrimination in favor of one employment against another, particularly through eminent domain, by which private property is taken." [4]

### V

■ We agree with the basic holding of the Court of Appeals, which is that when the property being condemned will not be developed for use by the public, exercise of the power of eminent domain is not permissible under sections 13 and 242 of the Constitution of Kentucky unless the property lies within an area of land which is blighted as defined by statute. The elimination of blight by developing the property according to a proper plan constitutes a "public use" of the property. *Miller v. City of Louisville,* supra.

■ We hold as did the Court of Appeals that the Kentucky Local Industrial Authority Act is unconstitutional to the extent that it grants a city or other governmental unit the unconditional right to condemn private

4. 26 Am.Jur.2d *Eminent Domain* Sec. 34, at 684–85 (1966) (footnotes omitted).

**8**

property which is to be conveyed by the local industrial development authority for private development for industrial or commercial purposes. In the language used by the Court of Appeals, "No 'public use' is involved where the land of A is condemned merely to enable B to build a factory or C to construct a shopping center."

The Court of Appeals also held that the provisions of the act relating to the power of condemnation as a means of furthering private development are severable from the remainder of the act. Consequently, the remaining portions of the act are not affected by the decision. We concur in this holding. *See* KRS 446.090.

The decision of the Court of Appeals reversing the judgment of the Daviess Circuit Court is affirmed. The cause is remanded to the circuit court with direction to enter a new judgment in conformity with this opinion.

All concur.