Clifford **HENN**, et al, Plaintiffs,

v.

**CITY OF HIGHLAND HEIGHTS, et al., Defendants.**

No. CIV. A. 98–95.

United States District Court, E.D. Kentucky, at Covington.

July 28, 1999.

Robert E. Blau, Jolly & Blau, Cold Spring, KY, for Plaintiff.

Steven J. Franzen, Newport, Ralph F. Mitchell, Edward R. Goldman, Rendigs, Fry, Kiely & Dennis, Cincinnati, OH, for Defendant.

## OPINION & ORDER

BERTELSMAN, District Judge.

This is an action seeking declaratory and injunctive relief and damages by certain property owners against the City of Highland Heights. The plaintiffs[1] complain

---

1. The plaintiffs include: Clifford and Betty Henn, who own and reside at 203 Sunset Drive. Their lots immediately adjoin the proposed redevelopment area. John Henry owns and resides at 202 Sunset Drive. His lots are across the street from the proposed redevelopment parcel. Betty Williams is the owner of and resides at 2929 Harrison Avenue, which is located approximately one block from the proposed redevelopment area. Lillian Wintersole resides in Newport, Kentucky, and owns Lots 431–434 on Miller Avenue. Said lots are within the proposed redevelopment parcel. James Markesberry resides in Crittenden, Kentucky and owns Lots 472–473 on Miller Avenue. Said lots are within the proposed redevelopment parcel.

against the designation of a certain area within the City known as Gateway West as part of an urban redevelopment project, pursuant to KY. REV. STAT. ANN. § 99.330, et seq.

The matter is now before the court on cross-motions for summary judgment, based on the administrative record. Additionally, the court has personally toured the area accompanied by attorneys for both sides.

Both sides admit that there are no issues of fact and that these cross-motions present a pure question of law. The parties agree that the court should decide the case on the cross-motions.

## FACTUAL BACKGROUND

The Gateway West area in the City of Highland Heights is a roughly triangular parcel of land bounded by I-471 on the northeast side, Sunset Drive on the south side, and Miller Avenue on the west side. Presently, the land is zoned residential. The parcel consists of 105 lots covering fourteen acres. This area is part of a subdivision dubbed "Highland Baby Farms" that extends east to the Fort Thomas border. The lots are of such a size that two must be combined in order to build a single-family residence. Thirteen or so residences dot the parcel presently. *See* Doc. # 17, Defendant's memorandum in support, Exhibit 3, pp 76–78, for location and boundaries of parcel in question. Other aerial photographs and plates appear in the record.

The comprehensive plan for the City envisions the redevelopment of Gateway West as a whole with emphasis on uses such as a hotel/conference center, office, and limited retail because of its strategic location, visibility, and accessibility to Cincinnati. An added feature is its unique proximity to Northern Kentucky University.

The Urban Renewal and Community Development chapter of the Kentucky Revised Statutes provides for creating redevelopment districts that would eliminate slum and blighted areas. KY. REV. STAT.

ANN. § 99.330(2)(a)(Michie 1998). It provides for the expenditure of public money to acquire and prepare such areas for sale or lease for development or redevelopment. *Id.* at 2(b). In the fall of 1997, the City of Highland Heights sought to declare Gateway West a redevelopment area. By so doing, the City could develop this area as a whole rather than in a piecemeal fashion. However, this process involved the purchase of homes and relocation of the current residents.

Notice of an upcoming meeting to discuss the issue was provided directly to the affected property owners, and generally via local newspapers. At the meeting on February 25, 1998, the planning and zoning commission adopted a motion finding the Urban Renewal Development Plan conformed to the City's comprehensive plan. It passed the matter on to City Council. Again, after proper notice, the City Council held a meeting on April 6, 1998, and heard evidence for and against the declaration of a redevelopment district for the Gateway West area. The City put on experts explaining how Gateway West fit the description of a blighted area, to wit:

1. Pavement width and length not sufficient;
2. No curbs, ditches, gutters, berms, storm sewers, culverts;
3. Pavement on streets not entirely within platted public right of way;
4. Faulty lot layout, improper subdivision, obsolete platting;
5. Diversity of ownership, lots with no record owner, tax delinquencies;
6. Illegal dumping and storm water drainage problems; and
7. Deteriorated property.

Neighborhood residents disputed these findings, stating that conditions in Gateway West were no different than any other neighborhood in Highland Heights. Indeed, conditions were similar in the neighborhoods of some of the City Council members.

Nevertheless, the Mayor and Council made findings concluding Gateway West was a redevelopment area. This action was filed to seek review of this decision. Highland Heights and Henn submitted motions for summary judgment on January 13, 1999.

## JURISDICTION OF THE COURT

Plaintiffs invoke the jurisdiction of the court under 42 U.S.C. Section 1983. They claim primarily that their property has been subjected to reverse eminent domain and that the designation of the property as a redevelopment district denies them substantive due process in that the action was completely arbitrary. Additionally, plaintiffs maintain that there was no rational basis for such designation. Thus, plaintiffs claim violations of the Fourteenth Amendment to the Constitution of the United States.

■ The plaintiffs also make similar claims invoking state administrative law. The standard of review of the state court of state administrative actions is far broader than the standard of review by this court under the substantive due process theory. The latter requires that the action of the administrative body is not supportable on any rational basis, or is willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir.1992) (and cases therein cited).

■ Clearly, the reverse condemnation claim of the plaintiffs is without merit in that they have failed to exhaust state remedies. *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 734, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997); *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Also, they have not been deprived of all use of their property. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1016–1017, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

■ The plaintiffs' substantive due process claim is non-frivolous and of sufficient validity to vest the court with jurisdiction, however. Under recent cases, a person who is subjected by a state agency under the color of state law to a legislative action that is arbitrary and capricious in the strict sense (without any rational basis whatever) has a valid substantive due process claim. *Washington v. Glucksberg*, 521 U.S. 702, 720–721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); *Triomphe Investors v. City of Northwood*, 49 F.3d 198 (6th Cir. 1995), *cert. denied*, 516 U.S. 816, 116 S.Ct. 70, 133 L.Ed.2d 31, (1995); *Pearson*, 961 F.2d at 1222.

■ The court has jurisdiction of the substantive due process claim. Therefore, it may also entertain the state administrative law claims under the statute concerning supplemental jurisdiction. 28 U.S.C.A. Section 1367(a) (1999).

## THE MERITS

■ Following a careful review of the record, a personal inspection of the area concerned, and two hearings on the matter, this court concludes that the designation of the Gateway West area is at least arbitrary and capricious under state law in that there is no substantial evidence for certain essential statutory findings. Because of this conclusion, the court need not specifically decide the substantive due process claim.

A review of the statutory scheme will be helpful. Kentucky's redevelopment laws pertinent to this case are found in Chapter 99.330 et seq. The General Assembly determined the acquisition of blighted areas for redevelopment was a desirable end, as codified at § 99.330:

99.330 Legislative finding and policy— * * *(2) It is hereby declared:

\*       \*       \*       \*       \*       \*

(b) That the elimination of such [slums and blighted conditions] and the preparation of the land in such areas for sale or lease for development or redevelop-

ment *constitute a public use* and purpose for which public money may be expended and *private property acquired* and are governmental functions in the interest of the health, safety, and welfare of the people of the Commonwealth;

. . . .

KY. REV. STAT. ANN. § 99.030 (Michie 1998) (emphasis added).

At issue here is whether Gateway West is a "blighted area." The definition of a blighted area is found in KY. REV. STAT. ANN. § 99.340:

(2) "Blighted Area" means an area (other than a slum area as defined in this section) where by reason of the predominance of defective or inadequate street layout, faulty lot layout in relation to size, adequacy, accessibility or usefulness, submergency of lots by water or other unsanitary or unsafe conditions, deterioration of site improvements, diversity of ownership, tax delinquency, defective or unusual conditions of title, improper subdivision or obsolete platting, or any combination of such reasons, development of such blighted area (which may include some incidental buildings or improvements) into predominantly housing uses is being prevented;

The methods of pursuing the acquisition and clearance of blighted areas are detailed in section 99.370. The propriety of a master plan, a plan for the development area, and the scheduling and notice of necessary hearings is uncontroverted by the parties and will not be set forth here. The provisions in dispute under Section 99.370 are:

**Prerequisites for adoption of a development plan.**—No agency may acquire title to any land for the purpose of carrying out a development plan unless the following conditions have been met:

\* \* \* \* \* \*

(4) A finding has been made by the agency that there is a feasible method for the temporary or permanent relocation of families displaced from the development area, and that there are, or are being provided, in the development area or in other areas not less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of the families displaced from the development area decent, safe, and sanitary dwellings for such displaced families.

\* \* \* \* \* \*

(6) A finding has been made by the council:

(a) That the area is a slum area or that *all* the following conditions exist:

1. That the area is a blighted area;

2. That a shortage of housing of sound standards and design adequate for family life exists in the community;

3. That the need for housing accommodations has been or will be increased as a result of the demolition of residential units in slum areas under development plans; and

4. That the conditions of blight in the area and the shortage of decent, safe, and sanitary housing in the community cause or contribute to an increase in and spread of disease and crime and constitute a menace to the public health, safety, and welfare;

\* \* \* \* \* \*

(d) That federal assistance is necessary to enable the development area to be redeveloped in accordance with the development plan and funds will be available for the community share of the cost as required by the Housing Act of 1949 or other federal acts providing federal financial assistance, or that federal financial assistance is not necessary and all funds will available from other sources;

KY. REV. STAT. ANN. § 99.370 (Michie 1998)(emphasis added).

Kentucky's highest court found this statutory scheme for redevelopment constitutional:

[O]ur attention has been called to no provisions of Kentucky law, constitutional or otherwise, which would cause us to conclude that the elimination of slum ... and blight is not a legitimate objective for the exercise of police power of the state.

*Miller v. City of Louisville,* 321 S.W.2d 237, 240 (Ky.1959).

As stated above, this court finds itself standing in the shoes of a state court, pursuant to its supplemental jurisdiction of this matter. Thus, it will apply Kentucky state law on this issue. Kentucky state decisions make it abundantly clear that the role of a reviewing court is not to rubber stamp the administrative or legislative findings concerning adoption of a development plan.

Although the underlying statute is constitutional, the City cannot use the power of eminent domain given to it by the statute to take the private property of one person and cause it to be sold to another person unless the exceptional circumstances specified in KY. REV. STAT. ANN. 99.340 exist.

The court finds this case indistinguishable from *Prestonia Area Neighborhood Ass'n. v. Abramson,* 797 S.W.2d 708 (1990), wherein the Supreme Court of Kentucky made these principles very clear. There, the Court said:

Our review of urban renewal ordinances has been under the standard of whether or not the enactment was arbitrary. *Watkins v. Fugazzi,* Ky., 394 S.W.2d 594, 598 (1965); *Dinwiddie v. Urban Renewal and Community Development Agency,* Ky., 393 S.W.2d 872, 874 (1965). The "arbitrary" standard has been defined to mean whether or not the act or decision was supported by "substantial evidence." *American Beauty Homes,* 379 S.W.2d at 456; *Thurman v. Meridian Mutual Insurance Company,* Ky., 345 S.W.2d 635, 639 (1961).

*Id.* at 710.

And at page 711, the Court continued:

Regardless of the needs served by an urban renewal plan, there is no authori-ty for implementation of the plan unless the findings required by KRS 99.370 are *supported by substantial evidence.* Kentucky law does not permit the taking of private property for the purpose of transfer to another private enterprise.

Naked and unconditional governmental power to compel a citizen to surrender his productive and attractive property to another citizen who will use it predominantly for his own private profit just because such an alternative private use is thought to be preferable in the subjective notion of governmental authorities is repugnant to our constitutional protections whether they be cast in the fundamental fairness component of due process or in the prohibition against the exercise of arbitrary power.

*City of Owensboro v. McCormick,* Ky., 581 S.W.2d 3, 5-6 (1979). Our decision in *McCormick* relied upon and quoted from the decision in *Chesapeake Stone Co. v. Moreland,* 126 Ky. 656, 104 S.W. 762, 765 (1907) where it was stated:

If public use were construed to mean that the public would be benefitted in the sense that the enterprise or improvement for the use of which the property was taken might contribute to the comfort or convenience of the public, or a portion thereof, or be esteemed necessary for their enjoyment, there would be absolutely no limit on the right to take private property. It would not be difficult for any person to show that a factory or hotel or like improvement he contemplated erecting or establishing would result in benefit to the public, and under this rule the property of the citizen would never be safe from invasion.

\*  \*  \*  \*  \*  \*

*Merely establishing a large administrative and legislative record does not entitle a legislature or administrative agency to declare an apple to be an orange. The record may be replete with expert testimony on similarities between the*

fruits; however, a legislature or administrative agency, regardless of the size of the record it establishes, cannot lawfully make such a declaration. To by legislative fiat declare an object to be something it is not is such an abuse of discretion as to be arbitrary. The Ordinances in their declaration of blight are thus arbitrary and violate Section 2 of the Kentucky Constitution in their exercise of arbitrary power through the taking of private property.

*Id.* at 712 (emphasis added).

The court believes that this rationale is totally applicable to the present case. There is no substantial evidence supporting the City's findings as required in paragraphs 2, 3 and 4 of KY. REV. STAT. ANN. § 99.370(6)(a).

In fact, the evidence shows that there is no shortage of housing of sound standards in the City of Highland Heights, but rather a normal real estate market of moderately priced housing exists in that community.[2] No demolition is slated for residential units in slum areas under the development plans and, therefore, the need for housing accommodations has not been and will not be increased by reason of such development.[3] There is no evidence that conditions of blight in the area and the shortage of decent, safe and sanitary housing in the community cause or contribute to an increase in and spread of disease and crime that constitute a menace to the public, health, safety and welfare.[4]

As stated at the second hearing in this matter, the court concludes that this statute is an inappropriate vehicle to accomplish the City's goals for this area. This statute is intended for a heavily populated urban area plagued with high crime, disease and poverty conditions.

Counsel for the City admitted that only ten (10) police calls a year were made to this area. This is undoubtedly not a high crime area in ordinary parlance, wherein one would expect ten police calls an hour.

The City claims that it has no intention of exercising eminent domain over this property, and then reselling the property to a developer. However, the statute clearly gives it that power once a redevelopment area has been declared.

The City further argues that under KY. REV. STAT. ANN. § 99.370, it need only meet the above criteria when it desires to take the property. However, the heading in the statute, which also appeared in the Kentucky Acts when the statute was enacted, provides that the findings are necessary for the adoption of a development plan. This is clearly the intent of the statute. For the court to allow the designation of the development area to stand would place a cloud of prospective eminent domain acquisition over the heads of the property owners, when the requisite conditions do not exist.

Therefore, the court being advised,

**IT IS ORDERED AND ADJUDGED** as follows:

1. That plaintiffs' motion for summary judgment (Doc. # 18) be, and it is, hereby **granted**;

2. That the motion for summary judgment of the defendant City of Highland Heights (Doc. # 16) be, and it is, hereby **denied**;

3. That the court adjudges and declares that the designation of the area described as Gateway West, as described in the record herein as a development area, was without substantial evidence for the necessary statutory findings and therefore is arbitrary, capricious and void;

4. That, in light of the above declaration, the court deems injunctive relief against further proceedings by the City unnecessary; however, if the City should proceed thereon, the plaintiffs may apply for injunctive relief, and the court retains continuing jurisdiction to grant the same;

2. KY. REV. STAT. ANN. § 99.370(6)(a)(2).

3. KY. REV. STAT. ANN. § 99.370(6)(a)(3).

4. KY. REV. STAT. ANN. § 99.370(6)(a)(4).

5. That all individual defendants are protected from damages by the doctrine of qualified immunity, in that the action taken herein did not clearly violate the plaintiffs' constitutional rights, but rather the law is not totally clear in this area;

6. That defendants' motion to dismiss Mayor Charles T. Roettger, II as an individual party (Doc. # 27) be, and it is, hereby **granted;** however, said motion to dismiss the plaintiffs, Clifford and Betty Henn, John Henry, and Betty Williams, for lack of standing (Doc. # 27) be, and it is, hereby **denied;**

7. That defendants' motion to strike notice of filing Exhibit E (Doc. # 31) be, and it is, hereby **denied;**

8. That the plaintiffs file a status report herein within **fifteen (15) days** of the date of this Opinion & Order, specifying what, if any, evidence they intend to offer on the claim for damages made in the complaint, or requesting the court to dismiss such claim. Dismissal of the claim for damages does not mean that the plaintiffs would not be entitled to attorney's fees;