**PRESTONIA AREA NEIGHBORHOOD ASSOCIATION, et al., Appellants,**

v.

**Mayor Jerry ABRAMSON, et al., Appellees.**

**Mayor Jerry ABRAMSON, et al., Appellants,**

v.

**PRESTONIA AREA NEIGHBORHOOD ASSOCIATION, et al., Appellees.**

Nos. 90–SC–548–TG, 90–SC–556–I.

Supreme Court of Kentucky.

Oct. 18, 1990.

William H. Allison, Jr., Eleanore Garber, Paul Soreff, Allison, Soreff & Garber, PSC, Louisville, for appellants.

Marvin J. Hirn, Hirn, Reed, Harper & Eisinger, Winston E. King, J. David Morris, Paul F. Vissman, Louisville, for appellees.

JOHN T. McGARVEY, Special Justice.

This case is before the Court on transfer from the Court of Appeals pursuant to CR 76.18(5). It is an appeal from a Declaratory Judgment of the Jefferson Circuit Court, Twelfth Division, which found City of Louisville Ordinances Nos. 114, 115 and 116, Series 1989 ("the Ordinances"), to be constitutional. The Ordinances, identical in form, declared the Louisville neighborhoods of Prestonia, Highland Park and Standiford to be blighted; approved an urban renewal plan for each neighborhood; and additionally approved a relocation plan for families and businesses displaced by the urban renewal projects.

The legislative and administrative record includes hearings before the Urban Renew-

al Commission, the Louisville and Jefferson County Planning Commission, the Louisville Board of Aldermen, and the Jefferson Circuit Court. The record comprises thirty-two volumes which total over 4,000 pages. These proceedings culminated in the enactment by the Louisville Board of Aldermen on April 20, 1989[1] of urban renewal ordinances for each of the three neighborhoods, all of which are adjacent to Standiford Field, Louisville's airport.

## NATURE OF THE CASE

The urban renewal plans have collectively been referred to as "The Airport Expansion Project"; however, the decision in this case does not determine whether or not Standiford Field may be expanded.

This case involves more than the expansion of Standiford Field. The uncontradicted testimony is that only five to fifteen percent of the land proposed to be taken and cleared by the urban renewal plans in the Standiford and Highland Park neighborhoods, and none of the Prestonia area, is necessary for the expansion of the airport. The urban renewal plans in the challenged Ordinances seek to redevelop the three residential neighborhoods into commercial zones associated with the airport.

The Court has been asked to determine whether the Ordinances which established and authorized the urban renewal plans are constitutional and otherwise conform to Kentucky law.

## APPLICABLE LAW

The Ordinances are denominated as urban renewal ordinances and invoke the power of KRS 99.330 to KRS 99.510. The Ordinances additionally borrow definitions from KRS 99.020 and certain powers and definitions from KRS 99.530.

The applicable statutes are those found in KRS 99.330 to KRS 99.510, and titled "Urban Renewal and Community Development." There may be certain parallel purposes between the development statutes enacted for cities of the first and second class at KRS 99.010 to 99.310 and the Ur-

ban Renewal and Community Development statutes; however, the statutory basis for urban renewal plans is a separate and distinct legislative scheme.

Appellees also look to KRS 99.530 for their authority to offer an urban renewal project "... for the prevention of the development or spread of slums or blighted, deteriorated, or deteriorating areas...." The legislative finding and policy, expressed at KRS 99.520, declares KRS 99.-530 applicable to areas "... susceptible of conservation or rehabilitation...." The acquisition and clearance of land is permitted in projects authorized pursuant to KRS 99.520 et seq.; however, the authority is limited to those portions of the project which are found to be "... slum, blighted or deteriorated areas,...."

Regardless of whether Appellees proceeded under KRS 99.330 et seq. or 99.520 et seq., the authority to acquire and clear land depends on a valid finding that the property to be acquired and cleared is a slum, blighted, or deteriorated area.

## STANDARD OF REVIEW

The Court accepts the proposition that a de novo review of legislatively determined facts is constitutionally inappropriate. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning & Zoning Commission*, Ky., 379 S.W.2d 450, 455–457 (1964). Appellants and Appellees each argue that the appropriate standard of review is whether or not the Louisville Board of Aldermen was arbitrary in its enactment of the Ordinances. It is here that their agreement ends.

Appellees' view is that any findings by the Board of Aldermen, if based upon a record, are not arbitrary and cannot be disturbed. Appellees cite *Conrad v. Lexington–Fayette Urban County Government*, Ky., 659 S.W.2d 190, 195 (1983) where this Court held that "[t]he legislature cannot be arbitrary or capricious." *Conrad* involved pure legislative action in the Urban County Council's declaration of public policy as to the construction of sani-

1. Signed by Appellee Mayor Abramson on April 25, 1989.

tary sewers. The standard of review was whether or not there was a rational connection between the action taken by the legislature (the Urban County Council) and the supporting evidence.

Our review of urban renewal ordinances has been under the standard of whether or not the enactment was arbitrary. *Watkins v. Fugazzi*, Ky., 394 S.W.2d 594, 598 (1965); *Dinwiddie v. Urban Renewal and Community Development Agency*, Ky., 393 S.W.2d 872, 874 (1965). The "arbitrary" standard has been defined to mean whether or not the act or decision was supported by "substantial evidence." *American Beauty Homes*, 379 S.W.2d at 456; *Thurman v. Meridian Mutual Insurance Company*, Ky., 345 S.W.2d 635, 639 (1961).

### DECISION OF THE COURT

This Court is not unmindful of the importance of the Ordinances we review to Louisville and the Commonwealth. However, it is not the role of the Court to determine what is best for the residents of a neighborhood, a city, or the state as a whole. The Court does not write our statutes. The Court must apply the unambiguous language of the statutes and interpret the statutes to give them fair meaning.

■ A prerequisite to the adoption of an urban renewal development plan by an ordinance is that the "council", or in this case the Board of Aldermen, find:

(a) That the area is a slum area or that all of the following conditions exist: 1) that the area is a blighted area; 2) that a shortage of housing of sound standards and design adequate for family life exists in the community; 3) that the need for housing accommodations has been or will be increased as a result of the demolition of residential units in slum areas under development plans; and 4) that the conditions of blight in the area and the shortage of decent, safe and sanitary housing in the community cause or contribute to an increase in and spread of disease and crime and constitute a menace to the public health, safety and welfare;

(b) that the development plan will afford a maximum opportunity consistent with the sound needs of the community as a whole for the redevelopment of the development area by private enterprise;

(c) that the development plan conforms to the general or master plan for the development of the community as a whole; and

(d) that federal assistance is necessary to enable the development area to be redeveloped in accordance with the development plan and funds will be available for the community's share of the cost as required by the Housing Act of 1949 or other Federal Acts providing federal financial assistance, or that federal financial assistance is not necessary and all funds will be available from other sources;

KRS 99.370(6).

The required finding which Appellants contest is that the neighborhoods are "blighted." "Blighted area" is defined at KRS 99.340(2) as:

... [a]n area (other than a slum area as defined in this section) where by reason of the predominance of defective or inadequate street layout, faulty lot layout in relation to size, adequacy, accessibility, or usefulness, submergence of lots by water or other unsanitary or unsafe conditions, deterioration of site improvements, diversity of ownership, tax delinquency, defective or unusual conditions of title, improper subdivision or obsolete platting, or any combination of such reasons, development of such blighted area (which may include some incidental buildings or improvements) into predominantly housing uses is being prevented; (emphasis added)

There is little evidence in the record, that by reason of the "predominance" of the conditions enumerated in KRS 99.340(2), that development of the neighborhoods in question "into predominantly housing uses is being prevented." To the contrary, the evidence clearly shows the areas have already been developed into predominantly housing uses, none or few of which are substandard. It is the use of the neighborhoods for housing that the Appellants are attempting to preserve.

The single finding in each of the Ordinances relating to a specific fact indicating blight is "[t]he area is adversely affected by both airport and traffic related noise and other environmental conditions which render it unfit for residential use." Noise is not one of the enumerated conditions in the statutory definition of blight. Even if we were to assume that noise could reasonably be linked to one of the enumerated factors constituting blight, there is not "substantial evidence" in the record of a noise problem rising to the level of safety or such that it is preventing the use of the area for housing.[2]

Appellees have cited testimony in the record concerning certain residences which are already adversely affected by airport operations. We recognize that there may exist certain indicia of blight for a limited number of homes, but we do not believe there is substantial evidence in the record as to the "predominance" of such conditions in any of the neighborhoods.

■ It is not for the Court to interfere in the process of drawing the boundary lines for an urban renewal plan. *Watkins v. Fugazzi*, 394 S.W.2d 594; *Dinwiddie v. Urban Renewal and Community Development Agency of Louisville*, 393 S.W.2d 872. However, it is appropriate for the Court to determine whether or not the inclusion of the entirety of each of the subject neighborhoods was arbitrary.

■ Regardless of the needs served by an urban renewal plan, there is no authority for implementation of the plan unless the findings required by KRS 99.370 are supported by substantial evidence. Kentucky law does not permit the taking of private property for the purpose of transfer to another private enterprise.

Naked and unconditional governmental power to compel a citizen to surrender his productive and attractive property to another citizen who will use it predominantly for his own private profit just because such an alternative private use is thought to be preferable in the subjective notion of governmental authorities is repugnant to our constitutional protections whether they be cast in the fundamental fairness component of due process or in the prohibition against the exercise of arbitrary power.

*City of Owensboro v. McCormick*, Ky., 581 S.W.2d 3, 5–6 (1979). Our decision in *McCormick* relied upon and quoted from the decision in *Chesapeake Stone Co. v. Moreland*, 126 Ky. 656, 104 S.W. 762, 765 (1907) where it was stated:

If public use were construed to mean that the public would be benefitted in the sense that the enterprise or improvement for the use of which the property was taken might contribute to the comfort or convenience of the public, or a portion thereof, or be esteemed necessary for their enjoyment, there would be absolutely no limit on the right to take private property. It would not be difficult for any person to show that a factory or hotel or like improvement he contemplated erecting or establishing would result in benefit to the public, and under this rule the property of the citizen would never be safe from invasion.

The decisions in *McCormick* and *Chesapeake Stone Co.* turn on whether or not the subject property was to be taken for a public use. The legislature has clearly stated that the elimination of slum conditions and conditions of blight, and the preparation of the land where those conditions exist for sale or lease for development or redevelopment is a public purpose. KRS 99.330. However, the public purpose of the taking, in this instance, is totally dependent upon a valid declaration of existing blight by the Board of Aldermen in each of the Ordinances.

The identical findings of blight in each of the Ordinances are essentially lengthy reci-

---

2. The Court notes that both Appellants and Appellees cite the same consulting firm to opposite conclusions. At pp. 37–38 of their Brief, Appellees cite noise from airport activity and the Watterson Expressway in the Highland Park neighborhood as "incompatible with and inappropriate for residential purposes." Appellants, at p. 5 of their Reply Brief, cite a study conducted by the same consulting firm used by Appellees as describing airport and road related noise in the Highland Park area as "typical of that found in an urban setting."

tations of statutory law. They do not indicate any bases for their legislative conclusions. Based upon this absence, we could declare these Ordinances arbitrary. *Caller v. Ison,* Ky., 508 S.W.2d 776, 777 (1974). However, we need not further address that point as we have reached our decision on other grounds.

There is no "substantial evidence" to support the declaration of blight made by the Board of Aldermen in each Ordinance. Merely establishing a large administrative and legislative record does not entitle a legislature or administrative agency to declare an apple to be an orange. The record may be replete with expert testimony on similarities between the fruits; however, a legislature or administrative agency, regardless of the size of the record it establishes, cannot lawfully make such a declaration. To by legislative fiat declare an objectto be something it is not is such an abuse of discretion as to be arbitrary. The Ordinances in their declaration of blight are thus arbitrary and violate Section 2 of the Kentucky Constitution in their exercise of arbitrary power through the taking of private property.

The judgment of the trial court is reversed and Ordinances Nos. 114, 115 and 116, Series 1989, of the City of Louisville are hereby declared unconstitutional, invalid, and void. This matter is remanded to the trial court for entry of a judgment in accordance with the terms of this Opinion and for the purpose of issuing a permanent injunction to prevent Appellees from demolishing or destroying properties pursuant to the urban renewal plan and project described in each Ordinance, or to otherwise act under the power of the Ordinances hereby voided.

STEPHENS, C.J., and COMBS, LAMBERT, VANCE and WINTERSHEIMER, JJ., concur.

LEIBSON, J., not sitting.

GANT, J., dissents without a separate opinion.