Dora E. DECKER, Appellant,

v.

CITY OF SOMERSET, Kentucky,
Appellee.

Emma PIERCE, Appellant,

v.

CITY OF SOMERSET, Kentucky,
Appellee.

Pauline DECKER, Dora E.
Decker, Appellants,

v.

CITY OF SOMERSET, Kentucky,
Appellee.

Nos. 91–CA–1328–MR, 91–CA–1329–
MR and 91–CA–1330 MR.

Court of Appeals of Kentucky.

May 15, 1992.

Discretionary Review Denied by
Supreme Court Nov. 11, 1992.

Ernie L. Woods, Somerset, for appellants.

Joe L. Travis, Travis and Knight Law Offices, Somerset, Phillip K. Wicker, Manchester, for appellee.

Before GUDGEL, HUDDLESTON and McDONALD, JJ.

McDONALD, Judge.

This is a consolidated appeal concerning the condemnation of private property owned by the appellants, Dora E. Decker, Pauline Decker and Emma Pierce. Appellee, City of Somerset, commenced the suit as the condemning authority under the Eminent Domain Act, KRS Chapter 416, in conjunction with statutory provisions KRS 82.105, KRS 82.110 and KRS 82.180.

After filing the suit, the City amended its petition and pled KRS Chapter 58 as additional statutory authority for the City's right to condemn.

The properties condemned are not within the city limits of Somerset, and this fact becomes one of the key legal arguments before us.

The facts are not in serious dispute. The judgment comes to us summarily from the trial court. According to the deposition testimony of the Somerset Mayor, Smith Vanhook, the properties acquired by condemnation will ultimately be deeded to the University of Kentucky. The properties are situated adjacent to the Somerset Community College, whose governmental and political alter ego is the University of Kentucky.

The proposed project is a 40,000 square foot conference and exhibit center with auditorium and theatre, also providing enough space for an economic development office complex.

Property-acquisition financing is by a bond issue to be repaid from the general fund of the City.

Segments of Mayor Vanhook's testimony shed a great deal of light on the background of this action.

Q.9 And you said that there was an agreement by the University of Kentucky to build this center on property to be acquired by the City of Somerset?

A. Yes.

Q.34 ... Well you say that it was the determining factor in the University's decision to build in Somerset that you donate this land. Is that correct?

A. We were asked—the City of Somerset was asked to give $500,000.00.

Q.69 ... Do you know for a fact that the University is going to run the show. As you call it?

A. That's who we deal with, the University of Kentucky. We're acquiring the

land for the University of Kentucky and ...

Q.70 And you plan to deed it to the University of Kentucky?

A. Yes sir.

Q.74 You know for a fact they're going to run the show?

A. I think that the University of Kentucky will own and operate the building, and I assume that they'll decide who gets in it and who doesn't and how it's structured.

Concerning the financing of the project, he responded:

Q.116 And that's being funded, as far as the City is concerned, by bond issue?

A. We did a bond issue.

Concerning the repayment by the City of the principal and interest, the Mayor answered:

Q.123 Where is that money going to come from?

A. That money that we're paying, that Mac has generated from our General Fund ...

Q.124 It's going to come out of the General Fund?

A. Yes.

Q.147 So if I understand you correctly, you don't know of any direct economic benefits they're going to get from it? There's going to be no revenue, other than taxes after you annex the area that's going to come in as a result of this to the City of Somerset?

A. Well it would be indirect growth for the City.

The City argues that the public purposes for the acquisition are multiple, including cultural, educational and economic developmental purposes.

The City points out that its contribution is toward a total project, which includes contributions from Pulaski County, the University of Kentucky and the Federal Government [Southern Kentucky Economic Development Corporation] by way of a congressional appropriation. The City established a "holding company" under KRS 58.-180 to raise the money required. Then all of the governmental agencies become sub-lessees under the general lease, with the holding company acting as landlord until the bonds are retired.

■ Keep in mind that KRS 58.020 approves of joint ventures between and among government agencies. The statute is explicit. It says, "A governmental agency acting separately or jointly with one or more of any such agencies, may acquire, construct, maintain, add to and improve any public project as defined in KRS 58.-010....'' That is exactly what we have in this case.

The factual history goes back to a resolution found in the July 6, 1988 minutes of the City of Somerset which stated:

### RESOLUTION

WHEREAS, there is a desire in the City of Somerset and County of Pulaski to establish a Somerset Community Center to be constructed at Somerset Community College, and

WHEREAS, the City of Somerset desires to establish a bond program to finance $1,000,000 of the construction costs with the United States Government to provide additional funds of approximately $470,000.

NOW, THEREFORE, BE IT RESOLVED by the Common Council of the City of Somerset, Kentucky, that the Mayor is hereby authorized to take the appropriate steps and initiate the appropriate procedures to contact bond counsel for the purpose of establishing said program.

Passed by the Somerset City Council this 6th day of July, 1988.

Then on April 10, 1989, another resolution was passed by the City which stated:

### RESOLUTION

WHEREAS, The City of Somerset intends to acquire property needed for the development of the Rural Economic Development Center and;

WHEREAS, The City of Somerset will use the powers of eminent domain if necessary to acquire said property and;

WHEREAS, These properties are generally described as follows:

Monticello Street (adjacent to Community College)

Highway U.S. 27

University of Kentucky Drive

WHEREAS, On April 10, 1989, the Somerset City Council met in regular session and a motion was made by the Legislative Committee Chairman and seconded by Mr. Gilmore for a resolution to be prepared and signed by Mayor Vanhook in reference to support the acquisition of property for the Rural Economic Development Center. The council will take the necessary action for the acquisition of property.

Finally, the City passed Ordinance 90–2, which provided that the City of Somerset Municipal Projects Corporation authorize one million dollars in revenue bonds to be issued and sold, the proceeds to go to the acquisition of the land and construction of the project at Somerset Community College. The authority to condemn is found in the ordinance as follows:

*Section 7.* Appropriate officers of the City, including the City Attorney, are hereby authorized and directed to take such actions as are necessary to acquire the site of the Project, which actions may include condemnation proceedings.

*Section 8.* Appropriate officers of the City are authorized and directed on behalf of the City and the Corporation, to make such agreements with the County as are required to insure the County's contribution to the Project.

The trial court entered an interlocutory judgment in favor of the City of Somerset holding that the City had eminent-domain power to condemn the properties of appellants under KRS Chapter 58.

In what follows is a discussion of the comprehensive issue on appeal: that the trial court erred in holding the City of Somerset has authority under KRS Chapter 58 to condemn the appellants' properties. However, our discussion is limited to the issues which are dispositive of the appeal.

The comprehensive issue is divided into sub-issues, the first asserted being that

KRS 58.140, the only condemnation statute in Chapter 58, applies only to projects financed under KRS 58.010–KRS 58.140, and does not apply to projects financed under the nonprofit corporation scheme in KRS 58.180.

The appellants argue the trial court erred in holding, as a matter of law, that the City had authority to condemn under KRS 58.140, only subject to the requirement of a "public purpose" and "the element of good faith."

KRS 58.140 states:

In the event a governmental agency is unable to acquire, by purchase or agreement, *any* real property deemed necessary for the *purposes* of a *public project,* such agency may acquire the same by condemnation ... as provided in the Eminent Domain Act of Kentucky. (Emphasis added.)

KRS 58.010(3) defines governmental agency as, "... any county, city, agency or instrumentality or other political subdivision of the Commonwealth."

Appellants contend that the City was proceeding under KRS 58.180 and not under KRS 58.020, as found by the trial court.

KRS 58.020 provides in part that:

A governmental agency acting separately or jointly with one or more of any such agencies, may acquire, construct, maintain, add to and improve any public project as defined in KRS 58.010, which public project may be located within or *without* or *partly without* the territorial limits of such governmental agency or agencies, and for the purpose of defraying the cost thereof may borrow money and issue negotiable revenue *bonds.* (Emphasis added.)

. . . .

In every instance the order, resolution or ordinance shall provide that the public project is being undertaken under the provisions of KRS 58.010 to 58.140 . . . .

To the point, the appellants claim the following conclusions of law as trial court error:

The City of Somerset is a "governmental agency" under either KRS 58.010(3) or KRS 58.180(1)(b).

However, the city has elected to finance this project through a nonprofit corporation under KRS 58.180 rather than issue the bonds itself under KRS 58.020. Therefore, the definitions and provisions of KRS 58.180 govern this action.

■ We are not persuaded by the appellants' argument. KRS 58.010 to 58.140 do not mutually exclude KRS 58.180.

Although KRS 58.180(1)(a) defines "public projects" more restrictively in that it recites an itemization of projects, however, it also has a saving clause when it says specific projects are "not by way of limitation." Additionally, the definition imposes a catch-all provision with this clause, "... and other edifices, projects and like things and objects intended for governmental and public purposes."

■ Under both statutory provisions, KRS 58.010(1) and 58.180(1)(a), the proposed project fits snugly and comfortably in either definition. Further, KRS 58.-180(1)(a) adopts the meaning of KRS 58.-010's definition of public project.

■ Appellants' argument about a difference in the definition of "governmental agency" meets the same fate. KRS 58.-010(3) specifically mentions "city." Under KRS 58.180(1)(b) "governmental agency" means:

... any division of the commonwealth which is a *municipal corporation* and political subdivision of the Commonwealth of Kentucky, or *to which* has been delegated the right to exercise part of the sovereign power of the Commonwealth. (Emphasis added.)

Our reasons are, first, *Anderson v. Wayne County*, 310 Ky. 597, 221 S.W.2d 429 (1949), decided, when building a courthouse as a public project, that a county was a "municipal corporation" within the meaning of the statute. Surely, the City of Somerset, which is statutorily a municipal corporation, would logically be construed a municipal corporation within the meaning of the same statute.

Secondly, the City of Somerset gained the power to condemn through the legislature. The City's power to take by condemnation as delegated is limited only by the public-purpose requirement which includes a defined public project and the exercise of good faith. Therefore, we view the City of Somerset as a proper governmental agency under either KRS 58.010(3) or KRS 58.-180(1)(b).

■ We do not believe that the method of financing affects whether the City of Somerset has the power to condemn outside its corporate limits. So let us get to that issue.

■ The issue debate is not over some elusive proposition of whether relief of unemployment is a "public project" within the legitimate concept of "taking" for public use. The uses and benefits for the residents and taxpayers of the City of Somerset will be mixed and mingled, but without question "in promotion of the public health, public welfare" and "for the purpose of creating or increasing the public recreational, cultural and related business facilities of a community." Although not as basic, such matters are no less essential to a community than the extension of water lines or sewers. These uses and benefits all fall within the broad concept of "municipal purposes." There are no statutory or case law impediments raised by this issue.

The second sub-issue states, even if appellee, the City of Somerset, can use KRS 58.140 to condemn appellants' property for projects financed under KRS 58.180, it cannot do so where the project violates the requirements of the statutory scheme and the Kentucky Constitution.

The crux of appellants' argument is that the trial court was in error in approving the City's power to condemn because the City was proceeding improperly in the financing of the project.

■ We see a clear distinction between the power of the City to condemn and the method of financing. One may be a legitimate exercise of power and the other not. We agree with the trial court that the City may be enjoined in the future from convey-

ing the property to the University of Kentucky and it may be enjoined from its method of financing; however, those issues are not germane to the issue of the power to condemn.

We conclude there was no error committed approving the City's right and power to condemn the properties involved.

■ The third sub-issue asserted is that a project located outside the territorial limits of the City of Somerset, which provides no income to the City by way of taxes or other revenue, and in which the City maintains no ownership interest does not serve a proper public purpose of the City of Somerset.

■ There is no question, statutorily or by case law, that a city may condemn property outside its territorial limits. KRS 58.-020 is the statutory authority. *Baker v. City of Richmond*, Ky.App., 709 S.W.2d 472 (1986), is the case law authority. The only restrictions, we surmise, are the requirement of public use or purpose and good faith. In that regard, we have no problem. Unquestionably, a project which houses an auditorium, theatre, offices for economic development of the area, and which will serve varied campus and community needs is for a public purpose and use.

■ Appellants' argument that the project is prohibited because it will produce no income to the City is not well taken. If the project was solely for cultural purposes with no income to the City, it certainly would be approved. No income production is not a criterion; however, we venture to say, there would be income to the City, as the mayor says, indirectly.

■ The tyranny found in condemnation is in the government taking private property, then transferring it to private persons under the guise of a public use or purpose. Such cases as *Prestonia Area Neighborhood v. Abramson*, Ky., 797 S.W.2d 708 (1990), and *City of Owensboro v. McCormick*, Ky., 581 S.W.2d 3 (1979), make unmistakable the attitude of our highest Court. In *Prestonia Area Neighborhood*, the Supreme Court said, "Kentucky law does not permit the taking of private property for the purpose of trans-

fer to another private enterprise." In the *City of Owensboro*, the Supreme Court said,

Naked and unconditional governmental power to compel a citizen to surrender his productive and attractive property to another citizen who will use it predominantly for his own private profit just because such an alternative private use is thought to be preferable in the subjective notion of governmental authorities is repugnant to our constitutional protections. . . .

■ It is, in our opinion, beyond quibbling that the facts under consideration herein do not fall within the prohibited status expressed in *Prestonia Area Neighborhood* and *City of Owensboro*.

Lastly, it is argued that the City of Somerset failed to show the necessity for condemning the appellants' property for the project in question.

■ In this regard, it befalls the appellants to show the lack of necessity in the City's determination to condemn.

The trial court found that the project was within the City's legitimate purpose of enhancing the community's cultural, educational, medical, economic and recreational opportunities. The land and the building would serve as a hall for exhibitions and concerts, as a theatre, as educational offices, and as classrooms and offices for nonprofit government financial economic development agencies, all of which uses coincide with municipal purposes.

■ The record offers substantial evidence to support the trial court's findings and conclusion. Although there is evidence that demonstrates a degree of confusion and inconsistency on the part of the City, such evidence is not sufficient to show clear error committed by the trial court.

In conclusion, we affirm the trial court because we follow the plain direction of the Supreme Court in *Com. Transp. Cabinet v. Taub*, Ky., 766 S.W.2d 49 (1989), in its overall discussion of the government's right to condemn, the Court said:

Upon a determination of necessity, the Commonwealth's right of acquisition

may be defeated only by proof of fraud, bad faith or abuse of discretion, and the landowner opposing condemnation bears the burden of proof.

Because the legislature delegated to the cities the statutory authority and power to condemn and thereby take private property, the same power and rights apply to the cities as to the Commonwealth as outlined in *Taub*. Therefore, because the condemning necessity was proven, and there was no proof of fraud, no substantial proof of bad faith or abuse of discretion, the trial court's Interlocutory Order and Judgment of Condemnation is affirmed.

All concur.