91 F.3d 143
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HIGHLAND PARK ASSOCIATION OF BUSINESSES AND ENTERPRISES, et
al., Plaintiffs-Appellants,
v.
Jerry E. ABRAMSON, et al., Defendants-Appellees.
 No. 94-6424.
 United States Court of Appeals, Sixth Circuit.
 July 3, 1996.
 
 Before: KEITH, SILER, and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 The Highland Park Association of Businesses and Enterprises appeals the district court's dismissal of its 42 U.S.C. § 1983 action against the City of Louisville and related defendants and the Louisville and Jefferson County Regional Airport Authority. The district court ruled that the statute of limitations ran against all defendants.
 
 
 2
 We concur in the district court's judgment that the statute ran with respect to the Regional Airport Authority. In regard to the City defendants, we vacate and remand to district court for a factual determination of whether the statute of limitations tolled as to any of the individual plaintiffs who are members of the Highland Park Association of Businesses and Enterprises.
 
 I.
 
 3
 The Highland Park Association of Businesses and Enterprises ("Business Owners") is a group of business owners, business operators, tenants and non-profit corporations from three Louisville, Kentucky neighborhoods in the vicinity of the Standiford Airport. The Business Owners' suit was filed in response to the Standiford Field Airport Expansion Project which was initiated in June 1988 by the City of Louisville ("City") and the Louisville and Jefferson County Regional Airport Authority ("RAA"). The project called for the acquisition of property in the neighborhoods of Highland Park, Standiford and Prestonia in order to provide for two new parallel runways and airport-related development. To implement the project, the City passed a series of ordinances in April 1989 declaring all three neighborhoods to be "blighted" and subject to the City's condemnation powers.
 
 
 4
 Residents from the three affected neighborhoods and their incorporated neighborhood associations filed suit ("Initial Complaint") in state court on June 26, 1989 challenging the validity of the ordinances. The preface to their complaint stated that the suit was being brought on behalf of "three stable, inner city Louisville, Kentucky neighborhoods comprising some 1,500 residences, numerous businesses, churches and nearly 4,000 people including many elderly residents." The complaint included the Highland Park Neighborhood Association as one of the plaintiffs in the suit, identifying it as "a non-profit corporation of residents and local business entrepreneurs organized and existing under the laws of Kentucky."
 
 
 5
 This suit ultimately went before the Kentucky Supreme Court which held on October 18, 1990 that the City's findings of blight were not supported by substantial evidence and was "such an abuse of discretion as to be arbitrary" in violation of Kentucky's Constitution. Prestonia Area Neighborhood Ass'n v. Abramson, 797 S.W.2d 708, 712 (1990). Following the Kentucky Supreme Court decision, the neighborhoods filed two state actions.
 
 
 6
 The neighborhoods filed an Amended and Supplemental "Class" Complaint ("Class Complaint") against the City defendants[1] in state court on January 22, 1991 seeking money damages under 42 U.S.C. § 1983 for the actions taken pursuant to the ordinances. In its preliminary statement, the Class Complaint indicates that the suit "is brought on behalf of more than three thousand present and former residents of the neighborhoods of Prestonia, Highland Park and Standiford in Louisville, Kentucky."
 
 
 7
 The Class Complaint for the first time sought certification of a plaintiff class. However, it does not assert the Business Owners as a class under Rule 23 of the Kentucky Rules of Civil Procedure.[2] Instead, the representatives in the Class Complaint brought their action for certification on behalf of the following classes of individuals: "all present homeowners and residents [of Prestonia, Standiford and Highland Park]"; "all persons who owned homes in the Prestonia Urban Renewal Project area and who sold their homes to Defendants after May 9, 1989"; and "all former homeowners and property owners of the Highland Park neighborhood who sold their properties to Defendants after May 9, 1989."
 
 
 8
 A second action was commenced by the neighborhoods in state court seeking injunctive relief against the RAA to preclude its acquisition and demolition of properties in the areas. Both the class action suit against the City and the suit seeking injunctive relief against the RAA were removed to federal district court where they were consolidated as one action.
 
 
 9
 The district court engaged the parties in extensive settlement negotiations culminating in the execution of a settlement agreement in July 1991. Subject to the agreement, the district court "temporarily" certified a class which included "all present and former owners of single family homes in the Standiford, Highland Park and Prestonia areas, other than those who have executed quitclaim deeds to the Regional Airport Authority." Some unnamed members of the classes moved to intervene, filing objections to the proposed settlement agreement. The Business Owners did not move to intervene. Following a fairness hearing, the district court entered an order on September 27, 1991 approving the settlement agreement with minor modifications.
 
 
 10
 The Business Owners filed the present complaint in district court on June 23, 1992 on behalf of "forty-one Plaintiffs who are owners of non-single family property, owners of income producing property, tenants (business and residential), owners and operators of businesses and non-profit corporations and non-profit enterprises in the Prestonia, Highland Park, and Standiford Field areas of Louisville, Kentucky." They seek money damages under 42 U.S.C. § 1983 based on alleged injuries suffered as a result of the urban renewal program.
 
 
 11
 Rejecting the Business Owners' arguments that they were potential class members in the Class Complaint, the district court stated in its September 30, 1994 Memorandum Opinion:
 
 
 12
 [A] simple reading of the Amended and Supplemental "Class" Complaint (in the Homeowners' Litigation), indicates that the "class" action was initiated on behalf of residential homeowners in the Prestonia, Highland Park, and Standiford areas. Nothing in the Amended and Supplemental Complaint sets forth claims to redress injuries of a business nature. Thus, plaintiff's contention that they were potential class members of the Homeowners' Litigation cannot stand. (Emphasis in original).
 
 
 13
 The district court went on to dismiss the Business Owners' present complaint, ruling that the statute of limitations on their claim had "expired, at the latest, on October 18, 1991 (one year after the Kentucky Supreme Court decision holding the Ordinances unconstitutional)." The Business Owners appeal.
 
 II.
 
 14
 Where the operative facts are not in dispute, this court determines as a matter of law whether the statute of limitations has expired. Hall v. Musgrave, 517 F.2d 1163, 1164 (6th Cir.1975). Because Congress did not establish a limitations period applicable to § 1983 actions, federal courts must "borrow" analogous state statutes of limitations. Board of Regents v. Tomanio, 446 U.S. 478, 483-85 (1980). "It is well established that the appropriate statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions." Jones v. City of Hamtramck, 905 F.2d 908, 909 (6th Cir.) cert. denied, 498 U.S. 903 (1990) (citing Wilson v. Garcia, 471 U.S. 261, 276 (1985)). Suits brought in Kentucky under § 1983 are therefore subject to Kentucky's one-year statute of limitations pursuant to Ky.Rev.Stat. § 413.140(1)(a). See Collard v. Kentucky Bd. of Nursing, 896 F.2d 179, 182 (6th Cir.1990). In Collard, this court held that the statute "begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." Id. at 183 (citing Sevier v. Turner, 742 F.2d 262, 273 (6th Cir.1984)).
 
 
 15
 Therefore, this court must apply Kentucky's one-year statute of limitations in the present case. As the district judge held, the plaintiffs in this case knew or should have reasonably known of their injuries by the date of the Kentucky Supreme Court decision in Abramson on October 18, 1990. Thus, the Business Owners' claim is time barred after October 18, 1991 unless the statute of limitations was tolled by the Class Complaint.
 
 III.
 
 16
 In American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974), the Supreme Court held that commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. While the American Pipe ruling pertained to purported class members who made timely motions to intervene after class certification is denied, the Supreme Court has clarified the American Pipe tolling doctrine holding that tolling should also extend to class members who file separate actions. Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 354 (1983). In Crown, Cork, the Court held that filing a prior class action tolled the statute of limitations for an individual class member's claim brought after certification was denied. Id. at 353-54.
 
 
 17
 Tolling under the American Pipe doctrine requires adequate notice to defendants so that no injustice is done:
 
 
 18
 The policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights,' ... are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.
 
 
 19
 American Pipe, 414 U.S. at 554-55 (emphasis added).
 
 
 20
 As Justice Powell noted in his Crown, Cork concurrence, "[w]hen thus notified, the defendant normally is not prejudiced by tolling of the statute of limitations. It is important to make certain, however, that American Pipe is not abused by the assertion of claims that differ from those raised in the original class suit." Crown, Cork, 462 U.S. at 355.
 
 
 21
 We therefore examine the facts of the present case in light of the principles set forth in American Pipe and Crown, Cork. Because the RAA was not included as a defendant in any class action until the present case, none of the tolling principles discussed above apply to the suit against the RAA. Therefore, the statute of limitations was never tolled with respect to the RAA, and the present action against the RAA was not timely filed. Accordingly, the dismissal of the action against the RAA should be affirmed.
 
 
 22
 With respect to the City defendants, the Class Complaint filed on January 22, 1991 should have tolled the statute of limitations for any of the plaintiff Business Owners who were members of the proposed class that sought certification. The Class Complaint sought class certification for present homeowners and residents from the three neighborhoods. It also sought certification for those individuals in the Prestonia and Standiford neighborhoods who sold their homes to defendants after May 9, 1989 and "all former homeowners and property owners of the Highland Park neighborhood who sold their properties to defendants after May 9, 1989."
 
 
 23
 This reference to "property owners of the Highland Park neighborhood who sold their properties to defendants after May 9, 1989" clearly put the City defendants on notice of the number and generic identities of the potential plaintiffs who may participate in the judgment. See American Pipe, 414 U.S. at 554-55. The City defendants should reasonably have foreseen that such property owners could include individual members of the Business Owners, especially in light of the fact that business entities were included generally as party in the Class Complaint by reference to paragraph "4" of the Initial Complaint filed in June of 1989.
 
 
 24
 The City defendants argue that they were not adequately notified of the claims now asserted by the Business Owners. However, as the district court noted in its Memorandum Opinion of September 30, 1994, "[a]lthough asserted from the business person's perspective, the claims alleged in the instant action mirror those presented by the plaintiffs in the Homeowners Litigation." A close examination of the Class Complaint and the present complaint supports the district court's finding. Both complaints share mutual claims common to both homeowners and property owners including: deprivation of substantial use and enjoyment; causing plaintiffs to forego or postpone improvement and repairs; causing substantial depreciation in the monetary value; fraudulent inducement of plaintiffs to sell for unfair and artificially reduced values; nuisance; and deprivation of right of association.
 
 
 25
 Therefore, plaintiffs who sold their Highland Park property to the defendants after May 9, 1989 qualify as members of a proposed class in the Class Complaint, and are consequently afforded the tolling protections prescribed under American Pipe.
 
 IV.
 
 26
 In Chardon v. Fumero Soto, 462 U.S. 650 (1983), the Court addressed how to calculate such a tolling in a § 1983 suit. "The practice of 'borrowing' state statutes of limitations 'logically include[s] rules of tolling.' " Id. at 657 (citing Tomanio, 446 U.S. at 485). Thus, this court must apply Kentucky's tolling rules to the present case. However, Kentucky law does not specify the tolling effect of a class action when class certification has been denied.
 
 
 27
 The Business Owners ask that we apply the tolling rules set forth in Ky.Rev.Stat. § 413.170(1) which governs suits brought against infants and persons of unsound mind. Ky.Rev.Stat. § 413.170(1) provides for the statute of limitations to run only after removal of either of these disabilities. The Business Owners argue by analogy that they suffered a legal disability in pursuit of their claim until the court decided whether they would be class members. They argue the one-year statute of limitations should not begin to run on the present action until September 27, 1991, when the district court approved the homeowners' settlement agreement. Thus, the filing of this complaint on June 23, 1992 would easily fall within the one-year statute of limitations.
 
 
 28
 This argument lacks merit. Ky.Rev.Stat. § 413.170(1) applies when a complaint is filed during the existence of a disability. In the present case, the statute of limitations began to run before tolling commenced. We find Ky.Rev.Stat. § 413.190 to be more analogous to the present case. Ky.Rev.Stat. § 413.190 restricts the tolling effect to a suspension of the statute of limitations during the period of time that a defendant obstructs prosecution of an action.
 
 
 29
 Under Kentucky law, in computing any time prescribed or allowed by an applicable statute, the day of the act, event or default after which the designated period of time begins to run is not to be included. Ky.Rev.Stat. § 446.030; see also DeRossett v. Burgher, 555 S.W.2d 579 (1977). Accordingly, the statute of limitations began to run on October 19, 1990, the day after the Kentucky Supreme Court announced its decision in Abramson. Therefore, 95 days passed before the statute was suspended beginning on January 22, 1991 when the Class Complaint was filed. At the time the district court approved the settlement agreement on September 27, 1991, the Business Owners should have been aware that they were excluded from the settlement.[3] Thus, the statute began to run again on September 28, 1991. An additional 270 days expired before the Business Owners filed their complaint on June 23, 1992. Thus--excluding the period tolled--the Business Owners filed their complaint exactly within one year, to the day. Consequently, the suit was timely for individual plaintiffs among the Business Owners who were proposed class members in the Class Complaint.
 
 
 30
 The Business Owners present suit obviously includes individual plaintiffs who would not be considered among the proposed class members in the Class Complaint. Therefore, the Association is not a proper party, and the statute of limitations bars its cause of action. However, some of the individual plaintiffs may be Highland Park property owners who sold their property to the defendants after May 9, 1989. The record does not provide adequate information for this court to make a factual determination as to which individual plaintiffs fit within this category.
 
 
 31
 Accordingly, the order dismissing the Business Owners suit against the City defendants must be vacated and the case remanded to district court for a factual determination as to which, if any, of the individual plaintiffs of the Association were Highland Park property owners who sold their property to the defendants after May 9, 1989 and therefore have not had their claims extinguished by the running of the statute of limitations.
 
 V.
 
 32
 For the foregoing reasons, the district court's judgment is AFFIRMED in part, VACATED in part, and this case is REMANDED to district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 The City defendants included: 1) the City of Louisville; 2) Louisville Mayor Jerry Abramson, individually and in his official capacity; 3) Joe Carradino, Project Manager of the Airport Improvement Plan; and 4) the Urban Renewal and Community Development Agency of Louisville. The RAA was not included as a defendant in this suit
 
 
 [2]
 The Class Complaint does incorporate, by reference to paragraph "4" of the Initial Complaint of June 26, 1989, language identifying the Highland Park Neighborhood Association as a party. See supra description of Association p. 2
 
 
 [3]
 The court had "temporarily" certified a class of single-family homeowners on July 9, 1991, in order to give class members notice of the proposed settlement. However, we view this notice as insufficient to stop tolling