**Holly RIEKE, Administratrix of the Estate of Herman Rieke Jr., and Herman Rieke III, Appellants,**

v.

**CITY OF LOUISVILLE and Department of Inspections, Permits and Licenses for the City of Louisville, Appellees.**

No. 90–CA–1005–MR.

Court of Appeals of Kentucky.

Sept. 20, 1991.

Rehearing Denied Dec. 6, 1991.

Discretionary Review Denied by Supreme Court May 6, 1992.

Joseph H. Cohen, Vincent Mallon, Morris, Garlove, Waterman & Johnson, Louisville, for appellants.

J. Michael Brown, Director, Bonnie K. Biemer, Asst. Director of Law, Dept. of Law, City of Louisville, Louisville, for appellees.

Before LESTER, C.J., and CLAYTON and WILHOIT, JJ.

WILHOIT, Judge.

This appeal is from an order dismissing the appellants' complaint whereby they had sought a declaration, to paraphrase the trial court, that the City of Louisville had impermissibly taken their property when it denied them a permit to construct a driveway across a portion of Southern Parkway.

The relevant facts as found by the trial court are as follows:

> Just before the turn of the century, Louisville developed three major parks in and around the city and connected them by a series of parkways. These parks and parkways exist today. One park, Iroquois, and one parkway, Southern, figure in this action.

> At the time it was acquired, Iroquois Park was some distance south of and outside the city. To allow access to the park and also to prepare visitors for the park experience Southern Parkway was developed. It ran over two miles from the end of the city street system to the park.

> The right to build Southern Parkway was acquired by gift from developers and land owners who anticipated that the parkway would open up their property and, hence, enhance its value.

> The particular portion of Southern Parkway in issue here was obtained in 1891 when a 150' wide strip was "dedicated and conveyed" to the Board of Park Commissioners for the purpose of a "Grand Boulevard". The Grand Boulevard was renamed Southern Parkway in 1893.

> In the beginning· Southern Parkway was a boulevard for horse and carriage travel. Later the car came to predominate and, in fact, it is now part of the state highway system. Until recently a bridle path paralleled the roadway. Today, in addition the roadway and side or service roads the 150' parkway has many trees, jogging paths, bicycle paths, and occasional small parks. And while the state road crews maintain the paved center portion, the City Parks Department maintains the rest of the 150' width.

> In 1925, Mr. Rieke bought a lot located on Southern Parkway at its intersection with Woodlawn Avenue and commenced to operate a bakery. In 1931, when the city adopted its first zoning ordinances, the corner portion of Mr. Rieke's property was zoned commercial. In 1952, Mr. Rieke leased a building located on a portion of his property to Commonwealth Life on a long term lease (which did not, in fact, expire till 1985). To facilitate this transaction his property was divided to make the leased property a separate lot. This subdivision could be done without city approval. Before the division, Mr. Rieke's property fronted on Southern Parkway and also on Woodlawn. In the division, a lot was created that fronted only on the service road for Southern Parkway and was surrounded on the other three sides by Mr. Rieke's remaining property. That is, Mr. Rieke had one U shaped piece of property and the leased lot which filled the hole of that U. The lot created for the Commonwealth lease contained a building but no driveway or parking. People using the building

parked on the street and walked to the building.

In 1954, the city passed an ordinance banning commercial driveways along Southern Parkway and the other parkways.

So things remained until 1985 when the lease to Commonwealth expired.

In an effort to make the building more attractive to new tenants, Mr. Rieke applied to the city for permission to place parking spaces in front of the building. They would be reached by a driveway from Southern Parkway. The city denied permission, citing the 1954 ordinance. Since the Commonwealth lot fronts only on Southern Parkway and Mr. Rieke's development and leasing of the other property prevents a driveway from the rear or side, he was unable to construct the parking lot. The absence of on site parking makes the building harder to lease.

The appellants principally contend that the City's enforcement of the ordinance in question denied them reasonable vehicular access to their property from the main thoroughfare which amounts to an inverse condemnation for which they must be compensated; that the ordinance violates the fifth and fourteenth amendments to the United States Constitution and Section 2 of the Kentucky Constitution because its enforcement is "an excessive exercise of police power which fails to substantially advance a legitimate state interest"; and the ordinance is a zoning ordinance which was not enacted in accordance with statutory procedures.

■ With respect to the appellants' last contention, we are in agreement with the appellees that the ordinance does not purport to regulate the use to which privately-owned property may be put in a particular area of the City; instead it regulates the use to which publicly-owned property constituting part of a "boulevard" may be put by private interests. We do not believe that KRS Chapter 100 is intended to apply to a situation such as that.

■ We turn now to the appellants' first contention that the ordinance denied

them reasonable vehicular access from their property to the main street or the thoroughfare portion of the boulevard. The ordinance had been on the books since 1954 and until 1985 apparently no question of reasonable access was raised by the landowner. It would seem that access to his property from the street must have been considered even by him to be reasonable during that time. When access to a street is limited under the police power of a unit of government, the reasonableness of the limitation is to be measured based upon the then use of the property rather than prospective future use. *Commonwealth, Dep't of Highways v. Carlisle,* Ky., 363 S.W.2d 104 (1962). The ordinance does not appear to have denied the landowner reasonable access to his property in 1954 or for that matter it does not do so now. Reasonable vehicular access to the appellant's property from the main thoroughfare is available by means of a service road which formerly was a bridle path. The fact that a vehicle has to travel a slightly more circuitous route from the thoroughfare to the service road to gain access to the appellants' property does not constitute unreasonable access. *See Commonwealth, Dep't of Highways v. Adkins,* Ky., 396 S.W.2d 768 (1965).

■ Under our law an abutting owner's right in a highway or publicly-owned street is a right of reasonable access to the highway or street system, but this means the right of access to such highways and streets as the appropriate governmental entity chooses to provide in the reasonable administration of its highway or street system, not a particular kind of street. *See Commonwealth, Dep't of Highways v. Sherrod,* Ky., 367 S.W.2d 844 (1963); *Dep't of Highways v. Jackson,* Ky., 302 S.W.2d 373 (1957); *Gibson v. Commonwealth, Transp. Cabinet, Dep't of Highways,* Ky. App., 777 S.W.2d 234 (1989). *Also cf. Quick v. Board of Park Commissioners of City of Louisville,* 20 Ky.L.R. 1457, 49 S.W. 483 (1899). If the city or state chooses to provide a boulevard consisting of areas of greenspace, service roads, and pedestrian pathways adjoining a main street

or thoroughfare as opposed to a simple street, an abutting owner cannot complain so long as he has reasonable access to the street system.

The appellants' constitutional argument is predicated first on the principle that governmental police power may not be used to invade private property rights unless the exercise of such power "bears a real and substantial relation to the public health, safety, morality or some other phase of the general welfare." *See Department for Natural Resources and Environmental Protection v. No. 8 Ltd. of Virginia*, Ky., 528 S.W.2d 684 (1975). We have no quarrel with the principle expressed by the appellants, but it has no application here since no private property right of the appellants has been invaded by the ordinance.

Second, the appellants' constitutional argument is predicated on their belief that the enforcement of the ordinance is an unreasonable restriction on the use of commercial property. Aside from the fact that the restriction on use applies to property of the City rather than to property of the appellants as we have said, the ordinance does not invade any property interest the appellants have under our law.

In light of the result we have reached as to the foregoing questions raised by the appellants, it is unnecessary to consider their civil rights violation claim under 42 U.S.C. § 1983 since their civil rights have not been violated.

The order of the circuit court is affirmed.

All concur.