CITY OF LOUISVILLE, Appellant/Cross–
Appellee,

v.

LOUISVILLE SCRAP MATERIAL
COMPANY, INC., Appellee/Cross–
Appellee,

and

LOUISVILLE SCRAP MATERIAL
COMPANY, INC., Appel-
lant/Cross–Appellee,

v.

CITY OF LOUISVILLE, Appellee/Cross–
Appellant.

Nos. 94–SC–629–TG, 94–SC–841–TG.

Supreme Court of Kentucky.

June 20, 1996.

Rehearing Denied Nov. 21, 1996.

Christina Heavrin, J. David Morris, Louisville, Charles Dant Kearns, John L. Tate, James R. Williamson, Catherine Murr Young, Stites & Harbison, Louisville, for appellant/cross-appellee, City of Louisville.

Leslie D. Aberson, Washer Kaplan Rothschild Aberson & Miller, Louisville, William E. Johnson, Johnson, Judy, True & Guarnieri, LLP, Frankfort, William L. Montague, Robert M. Watt III, John B. Park, Stoll, Keenon & Park, Lexington, for appellee/cross-appellant, Louisville Scrap Material.

William A. Thielen, Lexington, for amicus curiae, Kentucky League of Cities.

WINTERSHEIMER, Justice.

This appeal is from a summary judgment of the circuit court which held that Water Street was and is a dedicated public way and that the City acquired a 110 foot public railroad easement by condemnation in 1873 and that the three strips of land formerly occupied by CSX had reverted to the City by virtue of abandonment of the public use. The circuit court also held that Louisville Scrap Material Company has a private right of ingress and egress by rail over the property.

The City appeals the decision because it claims that the granting to Louisville Scrap Material the right of a private railway access over the land has no basis in law and materially interferes with the use of the public property by the city for public purposes. Louisville Scrap Material appeals on the grounds that the circuit court improperly resolved disputed issues of material fact, and committed errors of law that require reversal. Louisville Scrap Material does request this Court to affirm that part of the circuit court judgment which gave them a right of reasonable access by rail over the property in dispute.

The question presented on appeal is whether reasonable access to private property includes a right of a private railroad access when such rail access occupies and obstructs a public right of way without consent.

The City originally filed this lawsuit to recover possession of three parcels of land currently occupied by the Louisville Scrap Material Company. The three strips of land in question are located south of River Road, east of First Street, North of Washington Street and west of Jackson Street. Louisville Scrap Material claims that it has fee title to the land. The City contends that it is the owner of the land by virtue of condemnation and dedication as a public roadway.

The City, pursuant to a resolution of the general council, on March 20, 1873, instituted a condemnation proceeding against a large number of property owners along Baregrass Creek in order to acquire the property for construction and maintenance of a roadbed, a sewer and a public railway system. The condemnation was successful and on May 6, 1880, the City transferred the property to Louisville, Cincinnati and Lexington Railway Company. Shortly thereafter, the condemnees began a lawsuit to determine the extent of the land condemned and the extent of the property conveyed to the railroad. *Long v. Louisville & N.R. Co.*, Ky., 51 S.W. 807 (1899), held that the property condemned was 110 feet in width and encompassed the property described in the deed of conveyance and that the City conveyed to the railroad company the right of way so far as it owned the same along the route described. In 1987, CSX, the corporate railroad successor, conveyed all its right, title and interest in the property to Louisville Scrap Material by a quitclaim deed for the sum of $115,264.45.

Louisville Scrap Material, claiming it has fee title to the land, has occupied the land since 1987. The City, arguing that the land reverts back to the grantor when it is no longer used for public railroad purposes, contends that Louisville Scrap Material could not have received fee title to the property because CSX abandoned its ownership to the land when it attempted to transfer the title to the real estate to Louisville Scrap Material by virtue of a quitclaim deed. Accordingly, both parties now claim ownership of the real property.

I

The circuit judge properly determined that the city had ownership in the property in question. The evidence in the record indicates that the circuit judge correctly determined that Water Street was and is a dedicated public way and that the City acquired the 110 foot public railroad easement by condemnation in 1873, and that the three strips of land formerly occupied by CSX had reverted to the City by virtue of abandonment by CSX of the public use of the three strips.

■ *Long, supra,* held that the City properly condemned the land and paid the required compensation to the abutting landowners pursuant to a condemnation proceeding. *Long* held that the property condemned was a 110 feet in width and encompassed the property described in the deed to the railroad which is the same property in question today. *Long* also held that the City plainly conveyed to the railroad company the right-of-way so far as it owned the same along the route described. The circuit judge properly determined that although *Long* never specifically stated that the City only conveyed an easement for municipal purposes, the dicta in the case clearly reflects that the intent of the ordinance, the actual condemnation proceedings and the deed itself was to procure and use the land for municipal public purposes.

■ The circuit judge was correct in holding that the land specified in the deed executed May 6, 1880 between the City and the Railroad, which also encompasses the land in this case, was properly condemned by the City. Therefore the City acquired an ease-ment to the property for as long as the City continued to use the real property for public municipal purposes. *See McGee v. City of Williamstown,* Ky., 308 S.W.2d 795 (1958).

In addition, a plan of the City in 1831 prepared and published by the city surveyor shows that Water Street bounded on the east by Preston Street and on the west by Tenth Street. Through a series of deeds identifying Water Street as a boundary to the adjoining land, the existence of the street is traceable to the present day.

The City only acquired an easement through condemnation and as a result the only thing the City could transfer to the railroad is that easement. The deed executed in 1880 granted the railroad only an easement in the property, and not fee simple title to it.

■ We must now consider the question of reverter when the property ceased to be used for a municipal public purpose. The parties seem to agree that upon abandonment, a railroad right of way reverts to the grantor. *Mammoth Cave National Park Assn. v. State Highway Com'n,* 261 Ky. 769, 88 S.W.2d 931 (1935). As the circuit judge noted, the parties disagree as to who the grantor is in this case.

■ Upon the abandonment of property condemned for a public purpose, the party who originally condemned the property reacquires control of the land if the condemning party continued to use the property for a public purpose. However, if the condemning authority ceases to use the property for a public purpose, the real property at that time would revert to the owner in fee simple.

■ Here, the record shows that the City through transfer of an easement, has continued to use the property for a public purpose from 1880 to 1987 when CSX attempted to transfer the property to Louisville Scrap Material. At that point, the property ceased being used for a public purpose when Louisville Scrap Material claimed ownership of the land. Such a transfer resulted in an abandonment of the property by CSX. *Barton v. Jarvis,* 218 Ky. 239, 291 S.W. 38 (1927). Thus the City, by operation of law, reac-

quired an easement in the property when CSX attempted to transfer the property to Louisville Scrap Material.

## II

■ Next we turn to the issue of formal proof of dedication. The land has existed as a dedicated public right of way for over 150 years. The City presented evidence of an 1831 plan of the city prepared and published by the then city surveyor which shows Water Street bounded on the east by Preston Street and on the west by Tenth Street. There are also numerous documents and deeds which refer to the land now known as Water Street as continuing in an easterly fashion beyond First Street. The 1987 quitclaim deed between CSX and Louisville Scrap Material describes the boundary for each of the three parcels in question as Water Street.

Louisville Scrap Material argues that Water Street never existed east of First Street, claiming that the property was never properly dedicated as Water Street. The plats of the Jefferson County Clerk's office in 1825 and 1939 do not show Water Street extending beyond First Street. The evidence presented by the City is not conclusive so as to show that Water Street was ever formally platted.

However, we cannot say that the trial judge was in error when he determined that the land in question was dedicated for public use and that although there is no formal evidence of acceptance, the property had been used in an open and unrestricted manner by the general public for at least five years. The summary judgment procedure was correct.

■ KRS 82.400(3) provides in pertinent part that when any property has been opened to the unrestricted use of the general public for five consecutive years, it shall be conclusively presumed to have been dedicated to the city as a public way or easement, subject to acceptance by the city. The city, at any time after the expiration of five years, may pass an ordinance declaring the property dedicated and accepting the dedication. *Graves County v. City of Mayfield,* 305 Ky. 374, 204 S.W.2d 369 (1947), held in part that offers of dedication may be accepted by long continued use or by acts of governmental officials exercising control of the property and formal dedication is not required. *Pulaski County v. City of Somerset,* Ky., 364 S.W.2d 334 (1963) and *Commonwealth, Dept. of Highways v. Wynn,* Ky., 396 S.W.2d 798 (1965), both indicate that the intention of the owner to dedicate and the acceptance by the public may be inferred from the use of the public for a substantial number of years and there is no requirement for a formal ordinance dedicating or accepting the property in question.

The circuit judge did not commit reversible error when he determined that there was no formal proof of dedication. The evidence was sufficient to show a continuous use of the land. The circuit judge supported his findings by noting that there were numerous references to Water Street in both plats and deeds and the general populace believed that Water Street extended eastwardly beyond First Street. The circuit judge correctly noted that evidence of continuous use implies acceptance for public purpose and the fact that there is no evidence of formal acceptance of dedication is of itself not sufficient to deny the existence of Water Street at this point in time.

## III

We must reverse that portion of the judgment of the trial court which has been interpreted as requiring or granting the Louisville Scrap Material a right of railroad access to its private property.

■ Generally, under Kentucky law, a landowner has a right of reasonable access to a public highway limited by the necessity of local government or government in general to control public ways for the public interest.

■ An abutting landowner retains an easement over the roadbed to the extent it is required to allow him reasonable means of ingress and egress. *Potter v. Citation Coal Corp.,* Ky., 445 S.W.2d 128 (1969). However, under Kentucky law, the government still retains the authority to control the street or public ways so as to improve traffic flow and safety. *Commonwealth, Transportation*

*Cabinet v. Comer,* Ky.App., 824 S.W.2d 881 (1991). The abutting owner has a right in a highway or publicly owned street to the degree that it is a reasonable right of access, but this right is limited to the type of access the appropriate governmental entity chooses to provide in the reasonable administration of its highway or street system and not a particular kind of street. *Rieke v. City of Louisville,* Ky.App., 827 S.W.2d 694 (1991). The principle is that the rights of the abutting property owners are subservient to the rights of the public in the full enjoyment of public ways. *Levy v. Curlin,* Ky., 241 S.W.2d 997 (1951). The public's right of use also includes the right to have the abutting property owners refrain from any use which would interfere with the proper maintenance and improvement of the public way.

■ Fundamental property law holds that no one has the right to occupy the whole of a public highway to the exclusion of all others. *Stein v. Chesapeake & Ohio Ry. Co.,* 132 Ky. 322, 116 S.W. 733 (1909). A party occupying a city street is a tenant at will of the city. *Louisville & Nashville R. Co. v. City of Owensboro,* Ky., 238 S.W.2d 148 (1951).

■ In this situation, Louisville Scrap Material has property which adjoins four city streets which are used on a regular basis by their vehicles. There is no indication that the proposed Waterfront Park would interfere with any future use by Louisville Scrap Material.

### IV

We must now turn to the question of what the circuit judge meant by his concluding paragraphs in regard to reasonable access to the right of way.

■ There is no right of railway access to private property. Kentucky has long recognized a reasonable right of access to a public highway by abutting property owners. *Potter, supra.* However, an abutting property owner has no right to have a highway of a particular surface or pavement. *Commonwealth, Dept. of Highways v. Sherrod,* Ky., 367 S.W.2d 844 (1963). The property owner cannot have the right of access to adjacent roads including any kind of guarantee that certain types and sizes of vehicles can come and go from the abutting property. *See Moorlane Co. v. State,* Tex.Civ.App., 360 S.W.2d 918 (1962); *See also,* 39A C.J.S. *Highways* § 141(2).

■ *Gibson v. Commonwealth, Transportation Cabinet,* Ky.App., 777 S.W.2d 234 (1989), noted that the narrowing of a street which prevents an abutting property owner from unloading furniture from large trucks at its freight entrance and requires it instead to unload at a separate warehouse and bring smaller loads to the freight entrance is not a denial of reasonable access. A city can always deny access to a roadway for reasons of public safety. *Bowling v. City of Somerset,* Ky., 333 S.W.2d 769 (1960).

■ Here, the abutting landowner has a right of reasonable access to public roads because it is adjacent to four other city streets. The right of a city to establish and maintain a public road takes precedence over a competing railway use. The right of the City to control its streets makes a party occupying the streets of a city a tenant at will of the city. *L & N v. Owensboro, supra.*

Louisville Scrap Material has a reasonable right to access its property at this time without that right including a private railway spur. Louisville Scrap Material has access to four public streets. The City does not have to provide access of a particular kind of street. *Rieke, supra.* There is no common law or statutory right to rail access. Permitting a rail access to Louisville Scrap Material over the land in question would prevent the use of the property by the city dedicated for a public purpose. In effect it would allow Louisville Scrap Material to occupy the whole of the public highway to the exclusion of others as denounced in *Stein, supra.*

■ Until 1987, CSX or its predecessor held the right to use the easement to provide railroad services to the public. The use by Louisville Scrap Material of the easement since 1987 does not give it any right in regard to the superior rights of the city. Adverse possession does not run against a city. In any event permitting a right of rail

access to Louisville Scrap Material over the public roadway would constitute the use of public property for a private purpose which is prohibited by the Kentucky Constitution. *Prestonia Area Neighborhood Assn. v. Abramson*, Ky., 797 S.W.2d 708 (1990). "The tyranny found in condemnation is in the government taking private property, then transferring it to private persons under the guise of a public use or purpose." *Decker v. City of Somerset*, Ky.App., 838 S.W.2d 417 (1992). *See also Commonwealth v. Frankfort*, 92 Ky. 149, 17 S.W. 287 (1891). *See* Sections 2, 13, 179 and 242 of the Kentucky Constitution which forbid the use of public property for a private purpose.

*E.M. Bailey Distributing Co. v. Conagra, Inc.*, Ky., 676 S.W.2d 770 (1984) illustrates the constitutional prohibition against private use of public facilities. In a case that found the operating agreement for the use of a grain loading facility with a private corporation improper, the court stated "... if a member of the general public prevented other citizens from using the port authority facility and asserted a right to priority, such a person would commit a trespass on public property." *Id.* at 772.

Common carriers are the only entities in Kentucky who are entitled to operate rail services on a public street. An individual or corporation has no inherent right to use a public way to conduct his private business. *Terrell v. Tracy*, 312 Ky. 631, 229 S.W.2d 433 (1950). In order to make a special use of a public way for private gain, such as operating a railway track on a city street, a person must obtain a franchise, permit or license from the appropriate government agency. McQuillan, *Municipal Corporations* §§ 34.10, 34.07. *Cf. Consolidated Coach Corp. v. Kentucky River Coach*, 249 Ky. 65, 60 S.W.2d 127 (1933). As was stated in *Owensborough v. Sutton*, Ky., 13 S.W. 1086 (1890) "There is no reason nor necessity in this, or in any other cases like it, for a railroad company to use a public street ... for receiving or discharging freight; for such use necessarily defeats the purpose for which streets are dedicated to the public ... "

To the extent necessary, we reverse the decision of the circuit court in regard to the language which seems to convey a right to ingress and egress over the property in question in contravention to the right enjoyed by all other members of the public or to any other abutting property owner. We agree that Louisville Scrap Material should be allowed the same rights and privileges as any other abutting property owners but not in any greater degree. We consider the language of the court which directs the parties to mutually develop an acceptable plan for the use of the property as a means of rail access to its Preston Street plant as dicta which is inappropriate to the decision of this case.

Our decision in this case clearly rejects the arguments presented by the Louisville Scrap Material Company to the effect that there is any genuine issue of material fact or that the City is not entitled to a judgment as a matter of law which would prevent the entry of a summary judgment on the issue as to whether the property in dispute was dedicated to public use or whether the property was ever condemned or abandoned. The judgment of the circuit court was not in error in regard to the facts found by it.

Therefore the summary judgment of the circuit court is affirmed in regard to that part of its decision, but reversed as to the issue of access because Louisville Scrap Material has no right to rail access which exceeds that of an abutting owner or a member of the general public.

STEPHENS, C.J., and BAKER, GRAVES, KING and STUMBO, JJ., concur.

LAMBERT, J., dissents by separate opinion.

LAMBERT, Justice, dissenting.

I must dissent from that portion of the majority opinion which declares that Louisville Scrap Material has no right of railroad access to its property. The trial court held that Louisville Scrap Materials was entitled to the same rights of "reasonable means of ingress and egress" as that afforded the abutting property owners in the cases of *Potter v. Citation Coal Corp.*, Ky., 445

S.W.2d 128, 130 (1969), and *Hylton v. Belcher,* Ky., 290 S.W.2d 475, 477 (1956).

The majority opinion states that "Louisville Scrap Material has a reasonable right to access its property at this time ... [by] access to four public streets." Its view of what is reasonable is strained. The subject property was condemned by the city in the 1870's. Since that time, the railroad tracks located thereon have been used by Louisville Scrap Material or its predecessors. The assertion that this longtime Louisville corporation has other means of access ignores the fact that rail access is required for ongoing operations, a fact which has been so for nearly 100 years. Because such access is necessary for the corporation to maintain economic viability, I regard continued rail access to be the only "reasonable" access under the decisions of this Court. I would affirm the Jefferson Circuit Court in all respects.