RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0162P (6th Cir.)
File Name:  02a0162p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

|  |  |
|---|---|
| CHARLES MICHAEL PRATER; EUGENE HOLLIS; and LYNN SOWDER, *Plaintiffs-Appellants,* <br><br> *v.* <br><br> CITY OF BURNSIDE, KENTUCKY; RICHARD SADLER; CONRAD BRYANT; HENRY D. COFFEY; EMMA BRANUM; DEAN LOVINS; DELORES SIZELOVE; and DAVID BRUMMETT, JR., *Defendants-Appellees.* | No. 00-6538 |

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 97-00241—Jennifer B. Coffman, District Judge.

Argued:  March 22, 2002

Decided and Filed:  May 7, 2002

Before:  NORRIS, SILER, and GILMAN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:**    Bryan Scott Hicks, Cincinnati, Ohio, for Appellants.  Jeffrey Scott Lawless, TRAVIS, PRUITT & LAWLESS, Somerset, Kentucky, for Appellees. **ON BRIEF:** Bryan Scott Hicks, Cincinnati, Ohio, for Appellants.  Jeffrey Scott Lawless, TRAVIS, PRUITT & LAWLESS, Somerset, Kentucky, for Appellees.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge.  The Main Street Baptist Church, through its pastor and trustees, brought suit in federal district court against the City of Burnside, Kentucky, as well as against the City's mayor and several council members, asserting claims pursuant to 42 U.S.C. § 1983 and the Religious Freedom Restoration Act (RFRA). These claims arose from the City's decision to develop a previously dedicated roadway located between two lots owned by the Church.  Both parties moved for summary judgment.  The district court granted summary judgment in favor of the City on the Church's § 1983 claim and dismissed sua sponte the Church's RFRA cause of action for failure to state a claim upon which relief may be granted.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Summit Avenue is a dedicated public roadway that runs in a north-south direction within the City.  This roadway has long been developed north of its intersection with Central Avenue.  But the portion of Summit Avenue that runs south of Central Avenue was not developed until 1997.  The development of this portion of Summit Avenue, referred to by

*Id*. at § 2000cc-5(5).  Under this definition, a government agency implements a "land use regulation" only when it acts pursuant to a "zoning or landmarking law" that limits the manner in which a claimant may develop or use property in which the claimant has an interest.

The applicability of RLUIPA in the present case, therefore, turns on whether the City acted pursuant to a zoning or landmarking law when it chose to develop rather than close Summit Avenue Extended.  As explained above in Part II.B.1., the City obtained its original interest in Summit Avenue Extended long before the Church acquired the adjacent property in 1985.  The City later acquired its interest in the realigned roadway upon the rededication of Summit Avenue Extended by the Church.  This property interest gave the City the right to choose whether to develop Summit Avenue Extended.  The City's decision regarding the fate of the roadway was thus not based upon any zoning or landmarking law restricting the development or use of the Church's own private property.

Accordingly, RLUIPA is inapplicable to the factual circumstances in the present case.  We therefore conclude that the district court did not err in dismissing the Church's RFRA claim.  In light of this conclusion, we need not address the City's argument that RLUIPA is unconstitutional.  *Lyng v. Northwest Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). Nor do we need to rule on the federal government's motion to intervene in the present case in order to defend RLUIPA's constitutionality.  The government's motion is thus denied as moot.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

(A) the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

(B) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

(C) the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

42 U.S.C. § 2000cc(a)(2)(A), (B), (C).

The Church contends that the City's decision to develop rather than close Summit Avenue Extended substantially burdened its religious exercise in the manner set forth in § 2000cc(a)(2)(C). Specifically, the Church maintains that the City's decision involved the implementation of a land use regulation that allowed the City to make an individualized assessment of the proposed use of the property involved. The City, on the other hand, argues that its decision to develop the dedicated roadway did not implement a land use regulation as defined by RLUIPA.

RLUIPA defines a "land use regulation" as follows:

[A] zoning or landmarking law . . . that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest.

the parties as "Summit Avenue Extended," gives rise to the present controversy.

Summit Avenue Extended and U.S. Route 27 run parallel to each other south of Central Avenue, with U.S. Route 27 lying to the east of Summit Avenue Extended. The Church owns a lot that lies between the two streets (Lot 1). Central Avenue marks the northern boundary of Lot 1. The Church also owns a second lot that abuts the western side of Summit Avenue Extended (Lot 2). Central Avenue marks the northern boundary of Lot 2 as well. The Burnside Masonic Lodge owns a large lot that abuts both the western edge of U.S. Route 27 and the southern boundary of Lots 1 and 2, on which the Lodge operates the Burnside Cemetery. Summit Avenue Extended terminates at the northern boundary of the Cemetery.

A 1949 plat of the City shows that Lots 1 and 2 had once been planned as a residential development, with each lot subdivided into nine individual parcels. Summit Avenue Extended would have provided the only street access to the Lot 2 parcels. The Church, however, abandoned the planned residential development when it acquired Lots 1 and 2 in 1985. It intended to locate its building and parking area on Lot 1, with Lot 2 reserved for future expansion.

The Church's design plan located its building near the western boundary of Lot 1, less than 20 feet from Summit Avenue Extended. A City ordinance, however, requires that structures be located at least 20 feet from a public roadway. To avoid violating this ordinance, the Church requested that the City close the dedicated roadway for Summit Avenue Extended and thus allow the Church to consolidate Lots 1 and 2.

The City refused the request, and subsequently brought suit in state court to enforce the above-referenced ordinance. This suit was resolved after the Church dedicated the land necessary to move the roadway for Summit Avenue Extended several feet to the west, which gave the Church's building the necessary clearance from the planned roadway. The City

approved the rededication of Summit Avenue Extended in 1988. Its suit against the Church was then dismissed for failure to prosecute in 1989.

In June of 1996, the City adopted a resolution to proceed with the development of Summit Avenue Extended. The purpose of the development was to provide direct public access to a shelter being constructed within the Cemetery. This shelter, located near the point where Summit Avenue Extended terminates at the Cemetery's northern boundary, is designed to facilitate grave-side funeral services.

The City informed the Church of the resolution in late June of 1996. This led the Church to once again request that the City permanently close Summit Avenue Extended. The City then put the development of Summit Avenue Extended on hold and invited the Church to submit an alternative proposal. By November of 1996, however, the Church had not yet responded. Instead, the Church sought a temporary restraining order in state court.

The Church's complaint alleged that the proposed development of Summit Avenue Extended would violate various provisions of the United States and Kentucky Constitutions, as well as RFRA, 42 U.S.C. §§ 2000bb-2000bb-4. In November of 1996, the state court issued a temporary restraining order that prohibited the City from developing Summit Avenue Extended. One month later, however, the court granted the City's motion to dissolve the restraining order. The court then granted the City's motion to dismiss the Church's complaint in February of 1997, which, over the City's objection, was dismissed without prejudice.

In March of 1997, the Church finally submitted a formal proposal for an alternative route of access to the Cemetery shelter. This proposal was rejected by the City the following month. The City began the development of Summit Avenue Extended shortly thereafter.

In May of 1997, the Church, through its pastor and trustees, brought the present lawsuit against the City, as well as against

(pointing out that RLUIPA amended RFRA in September of 2000). RLUIPA provides in pertinent part as follows:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution–
>
> (A) is in furtherance of a compelling governmental interest; and
> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1)(A), (B). On appeal, the Church maintains that the City's decision to develop rather than close Summit Avenue Extended violated RLUIPA.

Because RLUIPA amended RFRA, we may construe the Church's RLUIPA claim as an extension of its RFRA claim. *Dilaura*, 2002 WL 273774 at *6 (allowing the plaintiffs to pursue their RFRA claim under the standards set forth in RLUIPA). Applying RLUIPA in the present case, moreover, does not implicate the general presumption against the retroactive application of statutory law, because the Church is seeking an injunction that would prohibit the City from "using" Summit Avenue Extended in the future. *Id*. at *7 ("Injunctive relief is prospective, not retroactive.") (citing *Kikumura v. Hurley*, 242 F.3d 950, 960 n.5 (10th Cir. 2001) (holding that the application of RLUIPA was not retroactive where the plaintiffs sought injunctive relief)).

But the Church may not rely upon RLUIPA unless it first demonstrates that the facts of the present case trigger one of the bases for jurisdiction provided in that statute. *Dilaura*, 2002 WL 273774 at *8 (examining whether the plaintiffs' allegations satisfied one of the jurisdictional bases of RLUIPA before remanding the case for the district court to address the merits of the RLUIPA claim). RLUIPA, by its terms, applies only in a case where:

The Church next maintains that the City has deprived it of a protected property interest, arguing once again that the Summit Avenue Extended roadway belongs to the Church. But as explained above in Part II.B.1., any reversionary property interest that the Church might have in Summit Avenue Extended is subject to the City's superior right to develop the dedicated roadway for a public purpose. We have previously determined that the City in fact developed Summit Avenue Extended for a public purpose, thus foreclosing the Church's claim of any right to the roadway property.

Accordingly, the Church has not met its burden of showing a deprivation of any constitutionally protected liberty or property interest. As a result, the Church cannot establish a violation of its substantive or procedural due process rights. We thus conclude that the district court did not err in granting summary judgment in favor of the City on the Church's claim under 42 U.S.C. § 1983.

## C. RFRA, as amended by RLUIPA

In its complaint, the Church also asserted a claim against the City pursuant to RFRA, which provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the burden "is in furtherance of a compelling governmental interest . . ." and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. Less than two months after the Church filed its complaint, however, the Supreme Court declared RFRA unconstitutional. *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997). The district court thus dismissed the Church's RFRA claim for failure to state a claim upon which relief may be granted.

After the district court dismissed the Church's RFRA claim, and just eight days before the court issued its final judgment in the present case, Congress amended RFRA with its enactment of RLUIPA. *Dilaura v. Ann Arbor Charter Township*, No. 00-1846, 2002 WL 273774, at *5 (6th Cir. Feb. 25, 2002) (per curiam) (unpublished table decision)

the City's mayor and several council members, in the United States District Court for the Eastern District of Kentucky. The Church asserted claims pursuant to 42 U.S.C. § 1983, RFRA, and various provisions of the Kentucky Constitution. In suing under § 1983, the Church alleged that the City had violated the Free Exercise, Free Speech, Freedom of Assembly, and Establishment Clauses of the First Amendment, the Takings Clause of the Fifth Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

Both the City and the Church filed cross-motions for summary judgment. In August of 1999, the district court granted partial summary judgment to the City on the basis that the Church had failed to establish any violation of the First Amendment. Recognizing that the United States Supreme Court had declared RFRA unconstitutional, the court also dismissed the Church's RFRA claim for failure to state a claim upon which relief may be granted. After receiving additional briefing from the parties, the court granted summary judgment to the City on the remainder of the Church's § 1983 claim in September of 2000. Having dismissed all of the Church's federal claims, the court declined to exercise pendent jurisdiction over the Church's state-law claims.

The Church now appeals. First, the Church maintains that it offered sufficient evidence to sustain its claim under § 1983, relying specifically on the City's alleged violations of the Takings Clause, Free Exercise Clause, Establishment Clause, and Due Process Clause. Second, the Church argues that it has established a violation of RFRA, as amended by the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc-2000cc-5.

## II. ANALYSIS

### A. Standard of review

This court reviews de novo the district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772

(6th Cir. 2000). Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only where there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

The district court's dismissal of a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is also reviewed de novo. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 122 S. Ct. 992 (2002). When deciding whether to dismiss a claim under Rule 12(b)(6), "[t]he court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Id*. (citation omitted). A claim should not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Buchanan v. Apfel*, 249 F.3d 485, 488 (6th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## B.   42 U.S.C. § 1983

The Church maintains that the district court erred in granting the City summary judgment on the Church's claim under 42 U.S.C. § 1983, a statute that provides recovery for constitutional deprivations incurred under the color of state law. According to the Church, the City violated several constitutional provisions when it chose to develop rather than permanently close Summit Avenue Extended. Each of these alleged violations is analyzed below.

To establish either a substantive or procedural due process violation, the Church must first show that the City deprived it of a constitutionally protected liberty or property interest. *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) ("[I]n order to claim entitlement to the protections of the due process clause—either substantive or procedural—a plaintiff must first show that he has a constitutionally protected liberty or property interest . . . and that he has been deprived of that protected interest by some form of state action . . . .") (internal quotation marks and citations omitted). "Liberty interests that are protectible under the due process clause can arise either directly from the Constitution, or indirectly from the laws of the states." *Williams v. Vidor*, 17 F.3d 857, 864 (6th Cir. 1994) (Jones, J., dissenting). Protected property interests, however, do not arise from the Constitution, but instead "stem from an independent source such as state law." *Leis v. Flynt*, 439 U.S. 438, 441 (1979) (per curiam) (internal quotation marks and citation omitted).

The Church contends that the City's development of Summit Avenue Extended deprived the Church of its "religious" liberty interests; namely, the liberty interests created by the Free Exercise and Establishment Clauses of the First Amendment. As explained above in Parts II.B.2. and II.B.3., however, the Church has failed to raise a genuine issue as to whether the development of Summit Avenue Extended violated its rights under either of these Clauses. This failure leads to the conclusion that the City has not deprived the Church of any liberty interests created by the Free Exercise and Establishment Clauses. *See Doswell v. Smith*, No. 94-6780, 1998 WL 110161, at *6 (4th Cir. March 13, 1998) (unpublished table decision) (holding that the plaintiff's procedural due process claim, based upon the deprivation of his liberty interests under the Free Exercise Clause, was "subsumed" within his free exercise claim because "if the [free exercise] claim failed, so must the due process claim . . .").

alleged discrimination runs afoul of the Establishment Clause's prohibition of discrimination among religions.

To prove this alleged violation of the Establishment Clause, however, the Church relies upon the same evidence that it offered in support of its claim that the City violated the Free Exercise Clause. This evidence, as explained above in Part II.B.2., is insufficient to raise a genuine issue as to any discriminatory animus on the part of the City. Accordingly, even assuming that the Burnside Masonic Lodge is a non-Christian religious organization, the Church cannot establish a violation of the Establishment Clause.

### 4.   Due Process Clause

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This Clause clothes individuals with the right to both substantive and procedural due process. *United States v. Salerno*, 481 U.S. 739, 746 (1987) (analyzing the Due Process Clause of the Fifth Amendment). Substantive due process "prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty . . . ." *Id*. (internal quotation marks and citations omitted). Procedural due process requires that the government's deprivation of life, liberty, or property, even if consistent with substantive due process, "be implemented in a fair manner." *Id*. (internal quotation marks and citation omitted).

In the present case, the Church alleges that the City developed Summit Avenue Extended in violation of the Church's due process rights, both substantive and procedural. With regard to its right to substantive due process, the Church contends that the City's decision to develop the roadway was arbitrary and irrational. The Church maintains that this decision also violated its right to procedural due process, because the City allegedly rejected the Church's proposed alternative to developing Summit Avenue Extended without conducting a fair and open hearing.

### 1.   Takings Clause

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. This restraint on the power of the government to take private property, made applicable to the states through the Fourteenth Amendment, *Phillips v. Washington Legal Found.*, 524 U.S. 156, 163 (1998), is "designed to bar [the government] from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978) (internal quotations marks and citation omitted).

In the present case, the Church alleges that the City engaged in an unconstitutional taking when it developed Summit Avenue Extended. The Church must establish two elements to prove its case. Specifically, the Church must show that the City (1) "took [the Church's] property" and (2) "failed to compensate [it] justly or failed to put the property to public use." *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987).

The Church, therefore, cannot recover under the Takings Clause without first proving that the City took property that belonged to the Church when the City began to develop Summit Avenue Extended. Determining whether the City took the Church's property requires us to look beyond the Takings Clause, which protects rather than creates property rights. *Washlefske v. Winston*, 234 F.3d 179, 183 (4th Cir. 2000). We must instead assess the Church's purported property interest in Summit Avenue Extended in light of "existing rules or understandings that stem from an independent source such as state law." *Calvert Invs., Inc. v. Louisville & Jefferson County Metro. Sewer Dist.*, 847 F.2d 304, 307 (6th Cir. 1988) (internal quotation marks omitted).

Under Kentucky law, the dedication of a public roadway is governed by Kentucky Revised Statutes § 82.400. This statute provides that a party may dedicate a public roadway by

submitting a plat that depicts the proposed dedication to a city's legislative body. Ky. Rev. Stat. § 82.400(1). If that body approves the dedication, the plat is recorded in the county clerk's office and the dedication is complete. *Id*.

The Church followed the procedure outlined above when it "rededicated" Summit Avenue Extended in 1988. In particular, the Church submitted a plat that depicted the movement of Summit Avenue Extended several feet to the west, a relocation that allowed the Church to construct its building in compliance with the City ordinance requiring structures to have at least 20 feet of clearance from a public roadway. The City approved the dedication of Summit Avenue Extended as depicted in the plat, which was later recorded in the county clerk's office.

Section 82.400(1) does not indicate whether the dedication of a public roadway vests the public entity with title to the roadway, nor have we found any Kentucky caselaw that interprets this aspect of the statute. *See* 23 Am. Jur. 2d *Dedication* § 59 (1983) ("The effect of a statutory dedication, or the extent of the estate conveyed thereby, is generally indicated by the statute itself, according to which the fee may pass to the public . . . or may remain in the dedicator . . . ."). Under some dedication statutes, a dedication confers only an easement to use the dedicated land for a public purpose. *Id*. A valid statutory dedication, however, generally "vests the fee in the dedicatee in trust for the public . . . ." *Id*. But even if we assume that the City acquired only an easement to use the dedicated land for a public purpose, the Church still fails to establish an unlawful "taking" on the part of the City.

To prove its full ownership of Summit Avenue Extended, the Church first contends that the City's easement terminated when the Church acquired Lot 2 in 1985. The Church points out that Summit Avenue Extended would have provided the only street access to the residential parcels that were originally planned to be subdivided from Lot 2. Once those residential parcels were "consolidated" by the Church, the public need for Summit Avenue Extended allegedly

872 (1990), establishes that strict scrutiny applies where a government act implicates a combination of both the right to the free exercise of religion and any other fundamental constitutional right. But absent a violation of the Free Exercise Clause, the Church's hybrid-rights theory necessarily fails. Furthermore, as explained above in Part II.B.1., the Church has not shown that a genuine issue for trial exists regarding any violation of the Takings Clause. Nor does the Church offer any legal authority or compelling argument to explain how the City's refusal to allow the Church to expand its facilities on a dedicated public roadway implicates either the Free Speech or Freedom of Assembly Clauses. Finally, this court has rejected the "assertion that the Supreme Court established in *Employment Division v. Smith* that laws challenged by hybrid rights claims are subject to strict scrutiny." *Watchtower Bible & Tract Soc'y of New York, Inc. v. Village of Stratton*, 240 F.3d 553, 561 (6th Cir.), *cert. granted*, 122 S. Ct. 392 (2001).

### 3.    *Establishment Clause*

The Establishment Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, *Widmar v. Vincent*, 454 U.S. 263, 271 n. 8 (1981), provides that "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. I. This Clause, among other things, prohibits the government from preferring one religion over another. *Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.").

In the present case, the Church alleges that the City violated the Establishment Clause in deciding to develop rather than close Summit Avenue Extended. The Church maintains that, in making this decision, the City discriminated against the Church and in favor of the Burnside Masonic Lodge. It further contends that the Burnside Masonic Lodge is a religious organization that adheres to the "religion" of Masonry. The Church, therefore, concludes that the City's

than the City Council made the decision to reject the proposal, and that the mayor's decisionmaking process need not be open and public.

Neither party offered evidence to support its allegation regarding which arm of the City's government decided to reject the Church's proposal. We are thus unable to conclude whether the City reached its decision in violation of the Kentucky Open Meetings Act. Nevertheless, even assuming that such a violation occurred, this fact alone would not support an inference of religious discrimination on the part of the City. *See Schatzman v. County of Clermont*, No. 99-4066, 2000 WL 1562819, at *6 (6th Cir. Oct. 11, 2000) (unpublished table decision) (concluding that a departure from the prescribed procedure for reviewing an employee's performance did not, in and of itself, support an inference that the employee's termination was based upon discrimination rather than just cause); *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1039 (10th Cir. 1993) (expressing "significant doubts" as to whether the plaintiff offered sufficient evidence to establish a prima facie case of religious discrimination pursuant to Title VII where the plaintiff failed to offer evidence showing that the procedural irregularities in his performance review "were connected to the alleged discrimination").

The Church has thus failed to raise a genuine issue of material fact as to whether the City engaged in religious discrimination when it chose to develop rather than close Summit Avenue Extended. As a result, the Church cannot show that the City's decision implicated its rights under the Free Exercise Clause.

This conclusion also disposes of the Church's claim that the City violated its "hybrid rights," a term that the Church uses to describe a combination of its rights under the Free Exercise, Free Speech, and Freedom of Assembly Clauses of the First Amendment, as well as the Takings Clause of the Fifth Amendment. The Church argues that the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S.

"dissipated." This meant, according to the Church, that "the easement was gone as well." Relying on *City of Louisville v. Louisville Scrap Material Company*, 932 S.W.2d 352 (Ky. 1996), the Church maintains that it reacquired full ownership of Summit Avenue Extended upon the termination of the alleged easement. *Id*. at 355 (holding that when property condemned for public use is no longer used for a public purpose, the real property "revert[s] to the owner in fee simple").

The critical flaw in the Church's argument is that the realignment of Summit Avenue Extended took place in 1988, three years after the Church acquired Lot 2. In other words, the Church gave the City the right to use Summit Avenue Extended for a public purpose *after* the Church consolidated the nine residential parcels for which the roadway would have provided the only street access. Consolidation of those residential parcels in 1985, therefore, did not terminate the City's interest in the realigned roadway dedicated by the Church three years later.

The fact that Summit Avenue Extended was rededicated in 1988 is also fatal to the Church's abandonment argument. Citing *Sarver v. County of Allen*, 582 S.W.2d 40, 42-43 (Ky. 1979), the Church contends that a public road in Kentucky is abandoned if not used by the public for a period of 15 or more years. The Church maintains that, since it first appeared on a plat of the City in 1902, Summit Avenue Extended was never used by the public. Thus, the Church argues, ownership of Summit Avenue Extended passed to the owners of the property abutting that roadway many years ago, and now belongs to the Church. But even assuming that Summit Avenue Extended had been abandoned in its former location, the Church cannot plausibly argue that Summit Avenue Extended has been abandoned since its rededication in 1988, because 15 years had not elapsed prior to the roadway's development in 1997.

The Church nevertheless contends that even if the City did not surrender its interest in the roadway prior to 1997, its

rights terminated when the City decided to develop Summit Avenue Extended for the alleged private benefit of the Burnside Masonic Lodge. According to the Church, the City developed Summit Avenue Extended solely to provide additional street access to the privately owned Cemetery. The Church maintains that the development of a roadway with such a limited use does not serve any public purpose, and therefore goes beyond the scope of the City's interest in Summit Avenue Extended. As support for its argument, the Church relies upon the following language from *Prestonia Area Neighborhood Association v. Abramson*, 797 S.W.2d 708 (Ky. 1990):

> If public use were construed to mean that the public would be benefitted in the sense that the enterprise or improvement for the use of which the property was taken might contribute to the comfort or convenience of the public, or a portion thereof, or be esteemed necessary for their enjoyment, there would be absolutely no limit on the right to take private property. It would not be difficult for any person to show that a factory or hotel or like improvement he contemplated erecting or establishing would result in benefit to the public, and under this rule the property of the citizen would never be safe from invasion.

*Id*. at 711 (quoting *Chesapeake Stone Co. v. Moreland*, 104 S.W.2d 762, 765 (Ky. 1907)).

The above-quoted language explains the rule in Kentucky that prohibits "the taking of private property for the purpose of transfer to another private enterprise." *Id*. In the present case, however, the City has not transferred title to the Summit Avenue Extended roadway to the Cemetery. Summit Avenue Extended is not a private driveway for the Cemetery, but is instead a public roadway that any member of the public is free to use. Indeed, the Church itself may use the roadway for a rear entrance to Lot 1 or for a front entrance to Lot 2. Furthermore, the fact that Summit Avenue Extended currently runs only to the Cemetery does not deprive the roadway of its

discrimination based upon disparate treatment requires evidence that a party was treated differently from a *similarly situated* party with a different religious affiliation. *Vandiver v. Hardin County Bd. of Educ.*, 925 F.2d 927, 934 (6th Cir. 1991) (holding that the plaintiff could not sustain a free exercise challenge to a policy requiring students transferring to public school to pass a test before receiving credit for courses studied at home "[a]bsent evidence that similarly situated transferees from nonreligious home schools were provided an 'exemption' which [the plaintiff] was not . . ."). Yet the Church offers no evidence showing that, in terms of the parties' requests for roadway closures, it was similarly situated in either time or circumstances with the Burnside Masonic Lodge.

Specifically, the Church sought the closure of Summit Avenue Extended after the Burnside Masonic Lodge had requested that the roadway be developed to provide better public access to the Cemetery's shelter. Closing Summit Avenue Extended, therefore, would have required the City to forgo the public benefit associated with the roadway's development in order to allow the Church to pursue its expansion plans. The record contains no evidence as to whether the Burnside Masonic Lodge had asked the City to surrender any similar public benefit when it allegedly sought the closure of the roadways that had run through the Cemetery many decades ago. Absent additional evidence regarding the circumstances surrounding these earlier closures, an inference of present discriminatory animus on the part of the City is unwarranted.

The Church next maintains that the manner in which the City rejected its proposed alternative to developing Summit Avenue Extended shows the City's discriminatory animus toward the Church. In particular, the Church alleges that the City rejected its proposal during a meeting of the City Council that was held in violation of the Kentucky Open Meetings Act. This statute requires that the meetings of city governing bodies be "open" and "public." Ky. Rev. Stat. § 61.810(1). The City, on the other hand, contends that its mayor rather

Summit Avenue Extended happened to conflict with what the Church sincerely believes is its spiritual duty. Discrimination may not be inferred, however, simply because a public program is incompatible with a religious organization's spiritual priorities. The Free Exercise Clause "does not . . . offer to reconcile the various competing demands on government, many of them rooted in sincere religious belief, that inevitably arise in so diverse a society as ours." *Lyng*, 485 U.S. at 452. As the Supreme Court has explained, government acts often inadvertently frustrate certain citizens' "search for spiritual fulfillment," yet the government "simply could not operate if it were required to satisfy every citizen's religious needs and desires." *Id*.

The Church, therefore, must show more than disparate impact in order to prove discriminatory animus on the part of the City. It attempts to meet this burden by relying upon evidence that, in the Church's view, shows that the City (1) closed roadways on behalf of the Burnside Masonic Lodge and (2) violated Kentucky law in the manner in which the City rejected the Church's alternative to the development of Summit Avenue Extended. This evidence is examined below.

The Church first claims that the City has favored the Burnside Masonic Lodge in deciding whether to accept or reject requests for roadway closures. To support this allegation, the Church relies upon a comparison between two ancient plats affecting the Cemetery. The first plat, dated in 1902, shows three dedicated public roadways running through the Cemetery. These roadways do not appear on a 1949 plat of the City, the most recent one available. The Church maintains that the City's decision to close roadways for the Burnside Masonic Lodge while refusing to extend the same benefit to the Church manifests its discriminatory animus toward the Church.

Even assuming that, at some point in the distant past, the City closed roadways at the request of the Burnside Masonic Lodge, this would not necessarily give rise to an inference of present discrimination. An inference of religious

public character, because use of the roadway is not limited to members of the Lodge, but is in fact open to all members of the general public. The Kentucky Court of Appeals recognized this principle in *Sturgill v. Kentucky Department of Highways*, 384 S.W.2d 89 (Ky. 1964), when it explained that

> [a]ny public way naturally confers a special benefit on those persons whose property adjoins it. All roads terminate somewhere. Dead end streets or highways inevitably and particularly subserve the private interests of the last property owner on the line. Yet the public has an interest in reaching other members thereof.

*Id*. at 91.

Summit Avenue Extended, therefore, has been developed for a public purpose. This conclusion leaves the Church without any viable claim that the City took the Church's property when it developed the dedicated roadway. Accordingly, the Church cannot establish a violation of the Takings Clause.

### 2. *Free Exercise Clause*

The Free Exercise Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), "forbids all laws 'prohibiting the free exercise' of religion." *McDaniel v. Paty*, 435 U.S. 618, 620 (1978) (quoting U.S. Const. amend. I). This Clause protects not only the right to hold a particular religious belief, but also the right to engage in conduct motivated by that belief. *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990) (recognizing that "the exercise of religion often involves not only belief and profession but the performance of (or abstention from) physical acts . . .") (internal quotation marks omitted).

The Church maintains that the City violated its rights under the Free Exercise Clause by choosing to develop instead of permanently closing Summit Avenue Extended. It argues that

the City prevented the Church from following the "will or calling of God." The Church interprets this calling to require the expansion of the Church's facilities onto the Summit Avenue Extended dedicated roadway.

Whether the Free Exercise Clause protects a religious institution's desire to fulfill what it perceives as its spiritual duty to construct facilities on a dedicated public roadway is a question of first impression. We, of course, will not question "the plausibility of a religious claim." *Smith*, 494 U.S. at 887. Nevertheless, "'the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government.'" *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988) (quoting *Sherbert v. Verner*, 374 U.S. 398, 412 (1963) (Douglas, J., concurring)); *Strout v. Albanese*, 178 F.3d 57, 65 (1st Cir. 1999) (relying upon this principle in rejecting a free exercise challenge to a state statute that, under certain circumstances, authorized the payment of public funds to private educational institutions so long as the institution was nonreligious).

The Free Exercise Clause, therefore, does not entitle a religious organization to special benefits. *Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 701 (10th Cir. 1998) (concluding that the Free Exercise clause did not entitle children who were home-schooled for religious reasons to attend public school on a part-time basis when other home-schooled children were precluded from doing so). Accordingly, the City's refusal to abandon the dedicated public roadway in favor of the Church did not, in and of itself, burden the Church's rights under the Free Exercise Clause.

The Church, however, claims that the City engaged in religious discrimination when it developed rather than closed Summit Avenue Extended. A government act that discriminates against a particular religion triggers the protections of the Free Exercise Clause. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993) ("At a minimum, the protections of the Free

Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs . . . ."). The question, then, is whether the City in fact engaged in religious discrimination.

According to the City, resolving this issue is simply a matter of determining whether the City's decision with regard to Summit Avenue Extended was neutral on its face. But "[f]acial neutrality is not determinative . . . ," because "[t]he Free Exercise Clause protects against governmental hostility which is masked, as well as overt." *Id*. at 534. We must therefore consider whether the City, in developing rather than closing Summit Avenue Extended, intentionally sought to burden the Church's religious activities.

In the Church's view, the City chose to develop Summit Avenue Extended in order to favor the interests of the Burnside Masonic Lodge, the owner of the Cemetery, over the interests of the Church. The Church contends that this alleged favoritism is significant for purposes of the Free Exercise Clause because, unlike the Church, the Burnside Masonic Lodge is a non-Christian religious organization. It argues that, by allegedly giving preferential treatment to the Burnside Masonic Lodge, the City demonstrated its discriminatory animus toward the religious beliefs and practices of the Church.

The development of Summit Avenue Extended did in fact provide a benefit to the Burnside Masonic Lodge to the extent that the roadway now allows the Lodge to better serve those who visit its Cemetery. But the ultimate beneficiary of this development is the general public, which now has increased access to the Cemetery and, in particular, to the shelter erected on the Cemetery property for grave-side funeral services. In contrast, closing Summit Avenue Extended would have benefitted only the Church without providing any comparable benefit to the general public.

The Church, therefore, is asking us to infer a discriminatory intent on the part of the City based upon the fact that, in the course of furthering the public interest, the development of